The East Texas Fire Insurance Company v. B. Perky.

No. 109.

**1. Fire Insurance — Premium Note — Default in Payment — Estoppel — Waiver.**—A policy of fire insurance provided that if any note taken for the premium was not paid at maturity, the policy was to cease and be of no effect from date of maturity of such note, and the assured was to be liable on the note for the time the policy was in force at monthly short rates, and also that either party could at any time cancel the policy upon certain notice and adjustment of the premium. The written application contained a similar provision, and also provided that the company should not be liable during such default in payment, nor until the policy should be revived by written consent. The premium note provided: "This company shall not be liable for any loss that may occur during the time this note remains overdue and unpaid." While the premium note was overdue and unpaid a fire occurred. *Held:*

1. Testimony of the assured that he relied upon the local agent, from whom he had requested an extension of the premium note, to inform him if payment should be insisted on, is not obnoxious to the objections that it was intended to elicit his motive, and that such reliance was not communicated to the agent or to the company.

2. The provisions above referred to in the contract of insurance were intended for the benefit of the insurer, and compliance therewith could be insisted on or not at the option of the company.

3. That considering all these provisions together, it was the intention that the nonpayment of the premium note at maturity should have the effect to suspend and not to extinguish the obligation of the policy.

4. The failure to pay the premium note at maturity relieved the company of liability under the policy while default in payment continued, unless the company waived that provision or estopped itself from insisting on it.

5. The provision requiring "written consent" to revive the policy may, like the other provisions, be waived by the company.

**2. Same — Charge of Court.**—See opinion for charge held to be confusing, misleading, and upon the weight of the evidence.

**3. Evidence.**—See last part of opinion for a statement of facts under which silence on the part of the company for three months after maturity of the premium note and the request of the assured for an extension, would be strong if not conclusive evidence of its consent to the extension requested.

APPEAL from Johnson. Tried below before Hon. J. M. Hall.

*Leake, Shepard & Miller,* for appellant.—1. The court erred in permitting the plaintiff to testify as a witness for himself to the effect, that after receiving the message from Chapman, as delivered by his son, he relied upon Chapman to inform him if the company would not extend his note, and that he was able and would have paid said note had he been notified the extension would not be granted.

As to the motive and intentions of plaintiff: Miller v. Jannet, 63 Texas, 82.

As to the authority of Chapman: Wall v. Ins. Co., 36 N. Y., 157.

2. It was not necessary for the insurance company to declare the policy forfeited for the nonpayment of the note. By the terms of the contract the policy ceased to cover as soon as the note matured and was not paid. Cohen v. Ins. Co., 67 Texas, 325; Thompson v. Ins. Co., 104 U. S., 252; Wall v. Ins. Co., 36 N. Y., 157; Williams v. Ins. Co., 19 Mich., 451; Joliffe v. Ins. Co., 39 Wis., 111; Pitt v. Life Ins. Co., 100 Mass., 500.

3. It was error to instruct the jury that the law would presume the defendant did not forfeit the policy because of the nonpayment of the note, because the instruction was upon the weight of the evidence.

4. The burden of proof was upon plaintiff to show a waiver of the forfeiture, as stated in the special instruction asked by the defendant; and the charge of the court, instead thereof, imposed the burden upon defendant to show that the forfeiture had not been waived.

5. The charge would naturally mislead the jury by confounding the forfeiture of the policy which was worked by the nonpayment of the note with the power reserved in the policy to cancel at any time, even if the note had been paid.

6. The instruction to the effect, that " The fact that the defendant failed to notify the plaintiff, upon his failure to pay, that said policy was forfeited, and failure to return the unpaid note, would not of itself necessarily prove that defendant had waived its right to forfeit the policy, or that it had forfeited said policy," was erroneous; because—

(1) The policy was forfeited by the failure to pay the note, and the question was whether the forfeiture had been waived, and the policy revived.

(2) The charge is directly upon the weight of the evidence.

7. The mere failure of the defendant, upon notice from Chapman that he had deferred the payment of the note due May 1, 1889, until he could hear from defendant whether it would extend the time of payment, to reply to Chapman, could not have the effect to keep the policy in force at all, and certainly not for an indefinite and unfixed period, namely, until the plaintiff should voluntarily pay the note. Wall v. Ins. Co., 36 N. Y., 157.

8. Chapman's agency to collect the notes for Cochran & Co. which were sent him for collection could not be considered to authorize him to waive any condition of the policy or revive the same. Such power is not implied in the power to collect the note. Whart. on Agency, sec. 208; Mech. on Agency, sec. 378; Gerrish v. Mayer, 70 Ill., 470; Lockhart v. Wyatt, 10 Ala., 231.

*Henry & Green*, for appellee.—1. The court committed no error in admitting the evidence complained of; a party to a suit may testify as to his motive for doing a particular act. Sweeney v. Conley, 9 S. W. Rep., 548; Hamberg v. Wood, 66 Texas, 783.

2. Chapman, at the time of the promise, held the note for collection, was agent of the company, and was acting within the apparent scope of his authority, to the extent at least of entertaining a proposition to extend the note. New Dig. of Ins. Dec., 469; Ins. Co. v. Norton, 96 U. S., 234.

3. There was no error in the charge of the court as complained of in the first, second, and third propositions under these assignments. The clause in the policy providing for its forfeiture on nonpayment of the premium note was not self-acting, but gave the company the right to forfeit the policy on nonpayment of the note; and having the right to elect whether it would forfeit the policy or continue it in force, they should have made the election. The law would not presume that they did or did not make the election, and to tell the jury so is not on the weight of evidence. Ins. Co. v. Griffin & Shook, 59 Texas, 512; 1 Pars. on Con., 427; 2 Pars. on Con., 190; Vent v. German Ins. Co., 26 Iowa, 9; U. S. Report, book 24, 245; Home Protection v. Avoy, 7 Am. St. Rep., 54, and note; Liddel v. Chichester, 84 Ala., 508.

4. The company in placing the note in Chapman's hands for collection had clothed him with all apparent authority that might attach to such an agency. It was in the apparent scope of Chapman's authority to collect the note to bind the company pending a negotiation entered into by Chapman for an extension of time. New Dig. of Ins. Dec., 469; Ins. Co. v. Norton, 96 U. S., 234; 1 Herm. on Estop., sec. 7.

5. If plaintiff's acts were calculated to deceive, and did mislead defendant to believe his insurance would not be forfeited, it does not matter whether the company intended by its acts to deceive or not, in law their acts would bind them; they would be a legal fraud if plaintiff was misled to his injury by them.

6. The general agents of the company at Dallas had the power under their authority to waive forfeitures, and could do so verbally, or by their acts and dealing with assured and by their general conduct with its policy holders, if plaintiff was deceived by their acts. Ins. Co. v. Lee, 11 S. W. Rep., 1026; Bonton v. Life Ins. Co., 25 Conn., 542; Morey v. Ins. Co., 9 R. I., 346; Rockwall v. Life Ins. Co., 20 Wis., 335; New Dig. of Dec., 567, sec. 121.

FINLEY, ASSOCIATE JUSTICE.—B. Perky, plaintiff below, filed this suit against the East Texas Fire Insurance Company, in the District Court of Johnson County, November 11, 1889, upon a policy of insurance dated May 19, 1888, and running three years, in the sum of $3600, upon a house and certain furniture therein, situated in Johnson County, which burned August 3, 1889.

The defendant replied, alleging that the policy had been issued for three years, for a premium of $90, for which plaintiff had executed two notes, due respectively October 1, 1888, and May 1, 1889, and that by

the terms of the policy the same ceased to insure in case the notes were not paid at maturity, and that by failure to pay the second note, which remained unpaid at the time of the fire, the liability of the defendant was avoided. Plaintiff filed a supplemental petition, alleging facts claimed to be a waiver of payment of the note at maturity, and constituting an estoppel against defendant denying its obligation under the policy. The policy was issued upon a regular application taken by the soliciting agent. This application contained a number of inquiries, to which answers were given, and the same having been signed by Perky, was forwarded to Cochran & Co., general agents at Dallas, who made out and signed the policy, and sent it to the local agent to be delivered to him. The application, dated May 17, 1888, contained the following provisions: "It is covenanted and agreed, that this company shall not be bound by any representations of the applicant, or any representations or promises of the agent or solicitor, not contained in this application and the policy to be issued thereunder. It is also covenanted and agreed, that if default is made in the payment at maturity of any one of the installments of premium to be paid as stipulated in the premium notes given herewith, the whole amount of installments remaining unpaid on said policy shall become immediately due and payable, and the policy of insurance issued thereon shall cease to insure, and the said East Texas Fire Insurance Company shall not be liable for any loss or damage which may accrue to the property insured thereunder during such default, nor until such policy shall be revived by written consent of the managers of said company's installment department, or by an officer of said company, on payment of all amounts due thereon."

The policy contained the following provisions: "If the premium of this policy, or any renewal thereof, be not actually paid, or if a draft or note be taken and received by way of payment of all or any part of said premium, and the same be not paid at the maturity thereof, then this policy shall cease and be of no force or effect from the date of the maturity of said note or draft, and the assured shall be liable on said note or draft for the time this policy was in force, at the customary monthly short rates."

The two notes taken for the premium and referred to in the application and policy were for $45 each, dated May 19, 1888, and payable respectively October 1, 1888, and May 1, 1889, and contained this clause: "This company shall not be liable for any loss that may occur during the time this note remains overdue and unpaid."

The case was tried May 6, 1891, and resulted in a judgment for plaintiff for $3195, with interest thereon from November 6, 1889.

*Opinion.*—First assignment of error presented: "The court erred in permitting the plaintiff to testify as a witness for himself, to the effect,

that after receiving the message from Chapman, as delivered by his son, he relied upon Chapman to inform him if the company would not extend his note, and that he was able and would have paid said note had he been notified the extension would not be granted."

Chapman was the agent of the insurance company at Alvarado, for the purpose of taking applications for insurance and collecting premiums. When the second premium note fell due, May 1, 1889, plaintiff was notified by Chapman that the note was due, and that he held it for collection. Plaintiff sent his son to Chapman to request an extension of the note until the fall of the year, and proposing to pay good interest; but instructed his son to tell Chapman to let him know whether the extension would be granted; if not, he would pay the money. The son delivered the message as sent, and was told by Chapman that he did not have authority to grant the extension, but would communicate the proposition at once to the general agents of the company at Dallas, and promptly inform his father on receiving the reply. The son informed the father of what Chapman said in reply to his proposition. In connection with the evidence above detailed, plaintiff testified that after being told what Chapman said about the extension of payment, he relied upon Chapman to inform him if the payment should be insisted upon. This testimony of plaintiff was objected to, upon the ground, that "it was intended to elicit the motive of the plaintiff, which was a question for the jury to ascertain from the evidence; and because this motive was based on a message received from Chapman, who was not the agent of the company, and because this reliance of plaintiff upon the message was not communicated to Chapman or to the defendant."

The material issue on the trial was whether the company had waived the provision in the contract to the effect that the policy should cease to insure upon default in the payment of the note, and became estopped from denying the binding force of the policy. Chapman testified, that he promptly communicated to the general agents of the company plaintiff's request for the extension; that he received no reply from them; that he communicated no further with plaintiff, and made no other demand for the payment of the note, though he continued to hold the same for the company. We think the testimony was of material importance. If plaintiff had not relied on the conduct of the defendant and its agents as indicating an acceptance of his proposition, he could not urge it as an estoppel. Chapman held the note, was the agent of the company for its collection, and must certainly be considered its agent for the purpose of receiving and communicating propositions bearing upon the payment of the note. We do not think the evidence obnoxious to the objections urged against it. Knickerbocker Ins. Co. v. Norton, 96 U. S., 234.

On the trial of the case the court charged the jury as follows:

"1. You are instructed, that if you believe from the evidence that plaintiff failed to pay the note due and payable May 1, 1889, then he will have no right to recover in this suit, unless defendant waived its right to forfeit said policy and continued same in full force and effect. The law will not presume that defendant did forfeit said policy because of the nonpayment of said note, but the fact of forfeiture, if any, must be shown by the evidence in the case. You are instructed, that if you believe from the evidence that upon failure of the plaintiff to pay the note due May 1, 1889, the defendant did not cancel the policy read in evidence before you, but continued the same in full force and effect as if said note had been paid, then you will find for plaintiff.

"2. The company, through its general agent at Dallas, could have waived the right to forfeit the policy upon payment of any one of the notes given by plaintiff, but the fact that said company failed to notify the defendant, upon failure to pay, that said policy was forfeited, and did not return the unpaid note, would not of itself necessarily prove that defendant had waived its right to forfeit the policy, or that it had forfeited said policy. But if the defendant knew that R. M. Chapman had deferred the collection of the note due May 1, 1889, until he could hear from defendant and learn whether defendant would consent to extend the time of the payment of said note, and failed to reply to Chapman, with the intention of deceiving plaintiff, and inducing him to believe that the time had been extended, then defendant would be liable on said policy."

These portions of the charge above quoted are assigned as error. The provisions in the contract of insurance herein before quoted were evidently intended for the benefit of the insurer, and compliance therewith could be insisted upon or not, at the option of the insurance company. Ins. Co. v. Griffin & Shook, 59 Texas, 510; Ins. Co. v. Griffin & Shook, 66 Texas, 233; Morrison v. Ins. Co., 69 Texas, 362; Cohen v. Ins. Co., 67 Texas, 325.

By the terms of the contract it was provided, that if default was made in the payment of either of the premium notes, that the policy should cease to insure, and the insurance company should not be liable during such default. There is an independent provision in the contract, authorizing either party to it to have the policy cancelled at any time upon certain notice and adjustment of the premiums paid. Considering all of these provisions together, giving to each of them its legitimate force and effect, we think the fair and reasonable interpretation is, that it was the intention that the nonpayment of the premium notes at maturity should have the effect to suspend the obligation of risk during the continuance of default in the payment of the premium. The provision that the "company shall not be liable for any loss or damage which may accrue to the property insured thereunder during such default," we think evidences

the intention that the policy should not become utterly extinguished by failure to pay the note at maturity.    Williams v. Ins. Co., 19 Mich., 461. The failure on the part of the assured to pay the premium note at maturity relieved the company of liability under the policy while default in such payment continued, unless that provision in the contract was waived by the company, or unless the company was guilty of such conduct in relation thereto as to render it unfair to the assured that it should insist upon exemption from liability under such clause, and thereby became estopped from denying the continued binding force of the obligation of risk.    Ins. Co. v. Griffin & Shook, 66 Texas, 233; Morrison v. Ins. Co., 69 Texas, 362.

The fact that the policy also provided that the company should not again become liable after default, "until such policy shall be revived by written consent of the managers of said company's installment department, or by an officer of said company, on payment of all amounts due thereon," we do not think stands in the way of the construction of the contract which we have given to it.    That provision stands upon no higher plane of binding force than the other provisions of the policy, and like them may be waived by the company, for whose benefit it was inserted; and the company may become estopped from asserting a noncompliance therewith by conduct leading the assured to believe that the risk was being carried by the company upon the property of the assured.    "They must not lead the party in default to believe that they consider the policy still in force; if so, they will be estopped from alleging the contrary when it is attempted to be enforced against them."    Ins. Co. v. Griffin & Shook, 59 Texas, 513.    "What occurs must be sufficient to make it unfair for the company to insist upon the defense.    It would be unfair if the agent has not done his duty."    Ins. Co. case, 66 Texas, 233; 2 May on Ins., sec. 370.

The real issues in this case, under the pleadings and evidence, are, Was there default in the payment of the premium note; and if so, has the company waived its exemption from liability during the default, or acted in such a manner in relation thereto as renders it unfair and inequitable that it should avail itself of the defense of such default?    The duty of proving the default was upon the defendant company, while the duty of establishing a waiver or estoppel against the company rested upon the plaintiff.    We think the charge was confusing, misleading, and upon the weight of the evidence, and that the assignments of error complaining of it are well taken.

We need not notice the other assignments of error, as our views will be sufficiently understood upon the points raised.    In view of another trial of the case, we think it proper to express further our views upon the vital points in the case.

If when the premium note fell due plaintiff communicated to the agent

who held the note, and whose duty it was to collect it, that he desired an extension of the time of payment, and would pay good interest, and if payment was insisted upon he would at once pay the note, it was the duty of the agent, if he did not have the authority to grant the extension himself, to promptly communicate the request to the general agents of the company. It then became the duty of the general agents to promptly refuse the same, if they did not wish to grant it; and silence on their part for a period of three months under such circumstances would be grossly unfair to the assured, and would be strong if not conclusive evidence of their consent to the extension requested. If the extension should be considered as granted, there would be no default at the time of the fire, and plaintiff would be entitled to recover for the loss. All of the relevant circumstances surrounding the matter, including the previous dealings between the insurer and the insured in relation to the policy and the collection of the premium notes, should be looked to in determining these issues.

The judgment is reversed and the cause remanded.

*Reversed and remanded.*

Delivered December 20, 1893.