[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 443 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 444 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 445 
The first and most important question presented in this case is: Did the contract, for the delivery of 10,000 bushels of barley, at the city of Albany, ever become obligatory upon the defendants; and if so, at what time?
It is insisted, on the part of the plaintiffs, that a contract was consummated by the correspondence between the parties, irrespective of either of the formal agreements signed by them respectively; that the proposition made by the defendants, under date of the 22d of August, was distinctly and unequivocally accepted by the plaintiffs in their letter of the 26th; and that the contract thus perfected having been subsequently embodied in the agreement dated August 30th, takes effect from the 26th, when the offer was accepted. There are, however, two conclusive objections to this position. First. It is evident, from the correspondence, that there was no concurrence of the parties as to the precise terms of the contract, until the mutual execution of the written agreement, dated August 30th. The letters on one side mentioned only "first quality Jefferson county barley," while those on the other spoke of "two-rowed" barley. That this discrepancy in the views of the parties continued up to and after the 26th, is proved by the enclosures in the plaintiff's letter of that day. The general acceptance of the defendant's offer, in the commencement of that letter, is qualified by the terms of the written contract enclosed, showing how the plaintiffs *Page 446 
understood the offer. The plaintiffs cannot be held to have assented by that letter to any contract, except that which was embodied in the written agreement enclosed, to which the letter itself referred. The two must clearly be construed together. But, again, if the parties had entirely agreed upon the terms of the contract, in their previous correspondence, the change in the written agreement of the 30th of August, in regard to the time for the delivery of the barley, made that a new contract, to take effect from the time of its adoption, and superseded the previous arrangement.
The real question then is, as to the validity of the agreement dated August 30th, and as to the time when it took effect, if at all. This agreement was signed by the defendants, and transmitted by them on the day of its date, by mail, to the plaintiffs, with a counterpart to be signed by the latter and returned. The plaintiffs received the documents on the 4th of September, signed and enclosed the counterpart, and deposited it in the mail the same day, addressed to the defendants at Sacket's Harbor, where they resided. Was any thing more necessary to complete the agreement; did the contract become obligatory upon the deposit of the counterpart in the mail, duly executed by the plaintiffs, or was its receipt by the defendants, or notice to them of its execution, essential to its validity?
This precise question has been so fully considered, in several modern cases, that it would be a work of entire supererogation to discuss it here. It arose in England in the case of Adams v.Lindsell, (1 Barn. Ald. 681.) In that case an offer to sell wool was made through the mail. The offer was received by the plaintiffs on the 5th of September, who wrote and mailed their answer, accepting the offer, the same evening; but this answer was not received until the 9th of September by the defendants, who, in the meantime, supposing their offer had not been accepted, had sold the wool to other parties. The action was for the non-delivery of the wool; and if the contract was regarded as consummated on the 5th of Sept., when the answer accepting the offer was mailed, the defendants were liable; but if not until its *Page 447 
receipt on the 9th, then no liability attached. The court held unanimously that the contract became obligatory on the 5th, when the answer of the plaintiffs was deposited in the mail. In the case of Mactier v. Frith, (6 Wend. 103,) the same question arose in this state, and was very elaborately discussed by our late court of errors. The court in that case, by an almost unanimous vote, affirmed the doctrine of Adams v. Lindsell,
in opposition to that of McCulloch v. The Eagle InsuranceCo., (1 Pick. 278,) in which the supreme court of Massachusetts had adopted a different rule. The decision inMactier v. Frith has since been followed in our own state in the case of Brisban v. Boyd, (4 Paige, 17;) in the state of Connecticut, in the case of Averill v. Hedge, (12 Conn. 424;) in Pennsylvania, in the case of Hamilton v. LycomingIns. Co. (5 Barr, 339;) and in Georgia, in Levy v. Coke,
(4 Georgia R. 1.)
The question has also again arisen in England, and been passed upon by the house of lords there, in the case of Dunlop v.Higgins, (12 Jurist, 295.) In that case, the case of Adams
v. Lindsell is referred to and confirmed in the most decided and unequivocal terms. The doctrine of this case, therefore, and that of Mactier v. Frith, (6 Wend. 103,) must be considered as too firmly settled, both in this country and in England, to be shaken or doubted. It is moreover maintained, in the cases referred to, by the most satisfactory and conclusive reasoning.
But it is insisted by the defendants' counsel, that this case is taken out of the rule by the concluding clause in the defendant's letter of the 30th August, which is in these words, viz: "We have extended the period of delivery to the 30th of October, as there will be at least ten days' delay from the date of your letter, before we can receive and act upon your reply.As soon as received, we shall send amongst the farmers and secure the first lots, even at an extra price, and where not threshed out, shall caution them against breaking the barley as little as possible." The idea advanced is, that this clause, taken in connection with that in the defendants' letter of the 22d August, in which they say, "It being understood that if this offer be accepted, speedy *Page 448 
notice of the same be given us," is equivalent to an express condition, that the defendants would be bound from the time whenthey should receive notice of the plaintiffs' acceptance, and not before.
But this position gives, I think, a force and an interpretation to those clauses which was never intended, and which they will hardly bear. The clause in the letter of the 22d August cannot with propriety be supposed to refer to any other than a notice by mail, through which the whole negotiation was no doubt expected to be, and was in fact conducted. When a notice is to be given by mail, in most cases if not in all, it is sufficient for the party giving notice to deposit in the mail. He can do nothing more to insure its safe delivery, and is not responsible for its miscarriage. In regard to the clause in the letter of the 30th August, it appears to me plain, that it was not intended and cannot be construed as fixing the time when the contract should become obligatory, but as expressive merely of the promptness with which the defendants designed to act, upon receiving notice that their offer was accepted. Something less equivocal than this, should be required to change a fixed and settled rule of law.
My conclusion therefore is, that the contract was perfected, and became obligatory upon all the parties, on the 4th of September, when the counterpart was deposited in the mail, and not before. It being a contract purely prospective, having no relation to any thing past, the antedating has no effect whatever upon the time of its inception.