ODOM HOOKER v. CONTINENTAL INSURANCE COMPANY OF
THE CITY OF NEW YORK.

FILED SEPTEMBER 17, 1903. No. 12,955.

1. **Insurance: DEFAULT.** The policy sued upon provided for suspen-
sion of the insurance during the time any premium note re-
mained overdue and unpaid; a loss occurred while plaintiff was
in default of payment of his first premium note; the note named
the agent as payee, but was owned by insurer. *Held*, That plain-
tiff's default, unless waived, suspended his insurance.

2. **Verdict: EVIDENCE.** Plaintiff pleaded a contract for an extension
of time in which to pay his matured premium note to a date be-
yond that of the loss, also, a waiver by receipt of payment after
notice of plaintiff's loss under the policy. *Held*, That a verdict
against the plaintiff is supported by the evidence.

3. **Error.** Record examined, and *held* to show no error.

ERROR to the district court for Stanton county: GUY T.
GRAVES, DISTRICT JUDGE. *Affirmed.*

*William W. Young* and *G. A. Eberly,* for plaintiff in
error.

*John A. Ehrhardt, contra.*

GLANVILLE, C.

Odom Hooker was plaintiff in the court below, and has
brought this cause before us on a petition in error, seeking
to reverse the judgment of the district court for Stanton
county, rendered against him in his action upon an insur-
ance policy for the value of stock killed by lightning. The
parties will be designated herein as plaintiff and defend-
ant, as they stood in the trial court. Before considering
the merits of the case, it is necessary to decide one prelim-
inary question.

Plaintiff assigns error for the giving of certain instruc-
tions by the court to the jury, and after filing his petition
in error with the record and his briefs, he was met by the
contention that the record did not show exceptions to the

instructions complained of, whereupon he applied to the district court for an order noting his exceptions. A hearing was had before the trial court, and the court made the following findings and order:

"Upon due consideration, the court doth find that the allegations and statements in plaintiff's motion and application filed herein are true. The court doth further find that the plaintiff having failed to make record of his exceptions, either by marginal notations in writing upon the original instructions of the court or by reducing the same to writing and filing the same in said cause, he is not now entitled to the entry of said order *nunc pro tunc,* and the same is, therefore, denied and refused."

These findings of the court are, in effect, that the plaintiff at the time of the giving of the instructions in question, then and there, duly excepted to each and every one of them, and that by the ruling of the court such exceptions were not allowed to be noted or entered upon the instructions, until after the verdict of the jury had been returned. These findings of the court, made a part of its record in the case, are sufficient to entitle the plaintiff to an examination of the instructions complained of; the instructions being "duly excepted to" at the time the same were given to the jury and the above findings being a sufficient record to show that the exceptions were properly taken.

The policy sued upon was issued by the defendant to the plaintiff, November 17, 1899, insuring him to the aggregate amount of $1,400 against loss of property by fire or lightning, and in consideration for the policy, the plaintiff gave an instalment note to the defendant for $44.80, payable in instalments of eleven and 20-100 dollars annually, without interest, the first instalment being due December 1, 1900, and also gave his note for $11.20, without interest, due March 1, 1900, of which, the following is a copy:

"$11.20.                    STANTON, NEB., Nov. 8, 1899.

"For value received, promise to pay to F. A. Frost, or order, eleven and 20-100 dollars, on or before the first day

of March, 1900, with interest at —— per cent. per annum (being first payment for policy of insurance based upon application made this day to the Continental Insurance Company of New York). This note shall not be valid unless said policy is issued by the company.

"And it is hereby agreed that, in case of nonpayment of this note at maturity, this company shall not be liable for loss during such default, and the policy for which this note is given shall lapse until payment is made to this company at its western department in Chicago, Ill., and in the event of nonsettlement for time expired, as per terms in contract, the whole amount of note may be declared earned, due and payable, and may be collected by law. This note is given to secure payment of a part of the premium for a policy of insurance. In case of loss under said policy this note shall immediately become due and payable, and may be deducted from the amount of said loss. If transferred either before or after maturity, by the company, it is agreed this note shall be subject to all defenses as if owned by the company herein named.

"ODOM HOOKER."

This note was not paid at maturity, and while it remained overdue and unpaid, the loss in question occurred. The policy sued upon contains the following provisions:

"But it is expressly agreed that this company shall not be liable for any loss or damage that may occur to the property herein mentioned, while any promissory note or obligation, or part thereof given for the premium remains past due and unpaid.

"The company may collect by suit or otherwise, the premium note or notes, and a receipt from the office of the company must be received by the assured before there can be a revival of the policy, which shall in no event carry the insurance beyond the original term."

The note copied above, although on its face made payable to an agent, is a note given for part of the premium for plaintiff's policy, and by the dealings of the parties,

and we think by the pleadings, has been considered and treated as, and in fact at all times it was the property of the defendant, and the plaintiff alleges a contract to extend the time of its payment made with the said Frost, and assented to by defendant, through its agent, and claims payment of the same to the defendant, by payment to the said Frost, and, we think, the note is one a default in payment of which would under its terms and the terms of the policy suspend the insurance during the time it remained overdue and unpaid.

Plaintiff's attorney took pains to bring out with emphasis upon cross-examination, evidence that Frost held this note for collection at the time a contract for extension is claimed to have been made, and at the time the note was paid, and his letter to the defendant under date of July 20, 1900, acknowledged by plaintiff, and introduced in evidence, is in part as follows:

"I also acknowledge receipt of a letter from your company bearing date June 23d, inclosing for me $11.20 which I had paid upon the first instalment note given under said policy to your agent, F. A. Frost, at Stanton, Nebraska, who held the same for collection and who collected the same from me with a full knowledge of the destruction of said property by lightning and surrendered said note to me at the time of payment. Early of the same week that my property was destroyed by lightning, your agent, Mr. Frost, came to my home in Stanton county for the purpose of collecting this note. I did not have the money at that time to pay the note, and told him that I would haul some hogs to town on Saturday of that week, or the following Monday, for the purpose of paying said note, and he stated to me at the time that it would be all right, and that you would wait upon me until that time. On the following Monday, June 11, I did as I agreed with Mr. Frost, hauled my hogs to town and paid the note in question after having told him of the destruction of said property by lightning."

It seems that the agent Frost, in company with one

Evans, a special agent of the defendant, called on plaintiff at his farm early in June, and urged payment of this note then three months past due, that the note was not paid, but plaintiff promised to pay it soon; that Sunday morning, June 10, three of plaintiff's horses were found dead, killed by lightning; that he called on the agent Frost Monday evening, and paid the face of this note to him and received the note. There is some conflict in the evidence, as to what took place at the interview on the farm. Plaintiff on direct examination stated:

"He (Evans) said he came there for the purpose of seeing me about the insurance note to the Continental Insurance Company. I told him I didn't have the money right then to pay it, but if he would extend the time till Saturday or Monday, and Mr. Evans or whatever his name is, I can't remember, he said all right, and I went and sold some hogs, I went to Mr. Frost and told him I'd sold and I'd pay him the money and he said that would be all right."

On cross-examination, he declined to swear that the agent did not tell him his policy would be in abeyance and that he had no insurance until his note was paid, and when asked, "Now they said they'd wait till Monday?" he answered, "Wait till Saturday; I told him I'd come and pay it." Both agents say he promised to pay the note Saturday, but deny saying it was all right, or giving any extension of time. Again plaintiff and one witness insist that plaintiff informed the agent Frost of his loss before he paid his note. This is denied by Frost. These are practically all the disputes between the parties as to the facts involved.

Plaintiff contends that his note, overdue at the time of the loss, was given to Frost, and that the defendant company had no interest therein, and that under the holdings of the court in *Union Life Ins. Co. v. Parker*, 66 Neb. 395, and *Pythian Life Ass'n v. Preston*, 47 Neb. 374, 379, his policy was not suspended because of the nonpayment of this note. In the case before us, no contract allowing this

note or the payment represented thereby, to become the property of, or retained by, the agent was pleaded or proved, and the note at all times has been recognized as the property of the defendant. The plaintiff at first swore that he had given the note to the company, though afterwards changed his statement in that regard, and said he had given it to Mr. Frost. It was explained by the agent why his name was inserted in the note. Mr. Frost did not write and issue such policies as plaintiff's, and the application therefor was taken by a traveling agent, Johnson, and he, Frost, took this note in this form, it seems, to show his connection with the matter. In the *Parker* case above referred to, the agent had a right to all of the first payment, and took a note therefor, payable to himself, and sold it, the proceeds belonging to him. The insurer recognized the title of the indorsee, and bought the note after the loss occurred.

In the *Preston* case cited, the contract with the agent who took the note which was unpaid at the time of the loss provided: "The compensation allowed said party of the second part (the agent) for his services rendered under the terms of this contract shall be 100 per cent. of the membership fee or advance premium adopted by the party of the first part and collected by the party of the second part." It was held:

"That the association had surrendered the right to any further control or direction of the collection of the fees and advance premiums"; and.

"That if he (the agent) extended credit it was not for the company but for himself."

Those cases are easily distinguished from the one before us, and their reasoning does not apply to the facts herein. This case, so far as this element of it is concerned, is governed, we think, by *Phenix Ins. Co. v. Bachelder,* 32 Neb. 490, s. c., 39 Neb. 95, and *Home Fire Ins. Co. v. Garbacz,* 48 Neb. 827, and the jury having found against the plaintiff on the disputed questions of fact, judgment on the verdict will be sustained, unless error is found in the instruction or rulings at the trial.

Plaintiff makes special complaint of instructions No. 2 and No. 6, because No. 2 instructs:

"That the burden is upon the plaintiff, and it is for him to prove every material allegation contained in said peti-tion by a preponderance of the evidence."

And No. 6 requires the jury, in order to justify a verdict for plaintiff, to believe "that the horses killed were covered by the policy."

He insists that these taken together may have misled the jury to his prejudice, because his petition alleges that the horses killed were owned by him at the time the policy was issued, and the proof shows that they were bought after-wards; and that while such allegation of ownership was immaterial, yet the jury may not so have understood. There is no merit in this contention. The instruction is correct as given, for the court by its first instruction stated the issues by recital of the material allegations and did not include the allegation of such ownership; and further-more, if plaintiff wanted a more explicit statement of the issues, he should have asked an appropriate instruction for that purpose, which he failed to do.

Again, the court, by several other instructions, narrowed the inquiry to the real issue between the parties and di-rected a verdict for the plaintiff upon a finding in his favor as to those issues; that is if the jury found the time of payment of the note involved had been extended to the day when it was paid, or that the forfeiture had been waived by receipt of payment with knowledge of the loss.

Plaintiff contends that the court erred in refusing in-structions No. 1 and No. 4, asked by the plaintiff. In-struction No. 4 so asked is somewhat lengthy, and we will not copy the same, but hold that it would have been error for the court to give it for two reasons; first, by this in-struction the jury would have been allowed to find for the plaintiff in a greater sum than the insurance upon the property lost. The policy is severable as to the amount of insurance on separate classes of property, and is for $200 on horses, mules and colts, and this instruction would

authorize a verdict for the total value of property lost, which proof shows to be $240.

Again, it is to the effect that if the defendant did not at once, upon notice of the loss, and nonpayment of the $11.20 note, cancel the policy and notify the plaintiff of its forfeiture, and offer to return the instalment note in its possession, this would be a waiver of the forfeiture or suspension clause of the policy, and render the defendant liable. That is not the law, as the policy, by the nonpayment of a premium note, was suspended and not forfeited as a whole, and could be reinstated by payment of premium, notwithstanding a dispute had arisen between insurer and insured as to liability for the loss involved herein.

Instruction No. 1 asked by the plaintiff would have been erroneous, for the first objection above stated to instruction No. 4, that is, that it would have allowed a recovery in excess of the amount of the insurance. It is also objectionable because it appears to require a verdict for the plaintiff if the time of payment of the note in question had been extended until "June 9, or 11, and that plaintiff, then and there, at the time of the extension agreed to pay the same on one of said dates." This would have been wrong; an extension of payment to June 9 would not make defendant liable for a loss occurring on June 10.

There are some assignments of error based upon rulings of the court on admission and rejection of evidence. Without reviewing the record at length on these assignments, we will say we have examined it carefully and find no error in these regards.

Plaintiff's cause was fairly submitted to the jury, the evidence sustains the verdict, the verdict and judgment are not contrary to law, and we find no error in the record.

We therefore recommend that the judgment of the district court be affirmed.

BARNES and ALBERT, CC., concur.

By the Court: For the reasons stated in the foregoing opinion, the judgment of the district court is

AFFIRMED.