L. T. KAVANAUGH et al. *v.* SECURITY TRUST & LIFE INSURANCE COMPANY.

(*Jackson.* April Term, 1906.)

1. **LIFE INSURANCE.** Forfeiture for nonpayment of premium will not be enforced where insurer does not give notice in accordance with its custom, when.

Forfeiture of a life insurance policy for nonpayment of the premium under a forfeiture clause in the policy will not be enforced, where the insurance company fails to give notice of the maturity of the premium, and the amount thereof, in accordance with its practice and custom so uniform and so reasonably long continued as to induce the insured to believe that the forfeiture for nonpayment will not be insisted on without the notice. (*Post, pp.* 41-43.)

Cases cited and approved: Insurance Co. v. Hyde, 101 Tenn., 396, 404, 405; other cases on pages 41 and 42 of the opinion.

2. **SAME.** Same. Notice of maturity of premium mailed, but not received, will not effect a forfeiture for its nonpayment, when.

In the absence of a statute or the express terms of the policy making sufficient the mere mailing of a communication containing information of the approaching maturity of the premium, it must appear that such communication was received before it will operate as notice, and thereby effect a forfeiture of the policy upon failure to pay on the day. (*Post, pp.* 43-55.)

Cases cited and approved: State v. Insurance Co., 106 Tenn., 282, 294, 295; other cases on pages 43-49 of the opinion.

Cases cited and distinguished: Otis v. Payne, 86 Tenn., 663, 666; Insurance Co. v. Hyde, 101 Tenn., 403; other cases on pages 49-55 of the opinon.

117 Tenn—3

3.  **SAME.** Policy construed to sustain it rather than to forfeit it, when.

Where policies of insurance contain inconsistent provisions, or are so framed as to be fairly open to construction, that view should be adopted, if possible, which will sustain rather than forfeit the contract. (*Post, p.* 56.)

Cases cited and approved: Insurance Co. v. Dobbins, 114 Tenn., 233, 234; Schmidt v. Insurance Co. (Ind. App.), 30 N. E., 939; Burkhard v. Insurance Co., 102 Pa., 262.

4.  **SAME.** Same. Provisions of notes accepted in lieu of annual premium measure the rights of the parties, and construed to save forfeiture, when.

Where a life insurance policy provided for annual payment of premiums, but instead of such payment the insurance company accepted payment of part, and notes for the balance thereof, the rights of the parties were measured by the provisions of the notes: and where the notes provided that they were given on the express understanding or agreement that for any loss occurring by death after the note is due and remains unpaid the company shall be liable, a forfeiture for nonpayment was not incurred, where notice was not given until after maturity, and the amount was promptly tendered after reception of the notice, and before the death of the insured. (*Post, pp.* 55-57.)

Cases cited and approved: Insurance Co. v. Harvey, 98 Tenn., 636, 639; Ressler v. Insurance Co., 110 Tenn., 411; other cases on pages 56 and 57 of the opinion.

FROM SHELBY.

Appeal from the Chancery Court of Shelby County.— F. H. HEISKELL, Chancellor.

MR. JUSTICE NEIL made the following statement of facts:

The defendant issued a policy July 9, 1897, on the life of J. M. Bowen in the sum of $5,000. This was assigned August 9, 1897, to complainants, L. T. and W. K. Kavanaugh, to secure a debt due them from Bowen. There was an agreement which was known to the company that the complainants were to pay the premiums.

The premium was $223, payable annually on July 15th, but an agreement was made with the company that the complainant should pay on that day $55.75, and should give notes each for a like amount, maturing at three, six, and nine months.

From 1897 to 1905, this plan was followed by both parties; notes being made payable at the Memphis National Bank, Memphis, Tennessee, and all notes were paid until the present controversy arose.

July 2, 1904, the defendant company notified the complainants that the premium of $223 would be due July 15th. Complainants replied:

"Referring to your letter of the 2d, in reference to the Bowen policy, would like to ask if it would be agreeable to you for my brother and myself to pay this premium as heretofore; that is, one-fourth cash and three notes at three, six, and nine months for the balance. If so, kindly forward the three notes and my brother and I will sign same and return with check for the first payment." This was signed by L. T. Kavanaugh.

The company replied: "We have yours of the 6th in re premium due on the Bowen policy, and it will be agreeable to us to accept one-fourth cash and three notes for balance, which notes are herewith inclosed for signature."

Upon receiving the notes the company wrote: "We have received from Mr. W. K. Kavanaugh check for $55.75 and three notes properly signed, in settlement of premium on the Bowen policy, for which we hand you official receipt herewith."

This receipt, after stating the number of the policy and amount of the premium and date of its maturity, continued: "Received the above-noted premium, payable in terms of the policy."

The three notes were each for $55.75, and matured October 15, 1904, January 15, and April 15, 1905. They were made payable at Atlanta, Georgia. This fact was overlooked by the complainants, who rested under the belief that they were payable, as all the others for the previous seven years had been, at the Memphis bank above referred to. The previous premiums had been paid to the agent in charge of the Nashville office. The latter transaction was with the general agents of the company at the Atlanta office, Aaron Haas & Son, to whom the cash and notes were transmitted.

On October 8, 1904, Aaron Haas & Son deposited in the mail in Atlanta, Georgia, postage prepaid, a letter addressed to complainants at Memphis, Tennessee, advising them of the maturity of the premium note falling

due October 15, 1904. This letter was not received by the complainants, and for that reason the note was not paid. It had been the custom of business between the complainants and the defendant during the preceding seven years that the defendant should notify the complainants of the maturity of notes several days before the falling due thereof, and the complainants had relied upon this custom, and had always paid promptly upon receiving the notice.

The note not having been paid at maturity, Aaron Haas & Son, on October 24, 1904, addressed a letter to the complainants, calling their attention to the fact, and adding: "As it was not paid when due, it will now be necessary for remittance to be accompanied by a health certificate signed by the assured, Mr. Bowen, the same subject to our company's approval." A blank certificate was inclosed.

To this letter the complainants on October 27th replied through L. T. Kavanaugh as follows:

"Gentlemen: I am in receipt of your favor of the 24th, with health certificate inclosed. I have had no notice whatever of this note. As they have formerly been sent to the Memphis National Bank, Memphis, where they are made payable, I had overlooked the matter entirely. I hardly think it fair of you to have allowed this matter to go on without giving me some notice, but I herewith inclose you my check for the amount, with interest at six per cent. from July 15th, and will ask that you mail me receipt. I have tried to locate Mr.

Bowen, the insured, but I understand he is out of the city, but under the circumstances, think you should accept this without the health certificate. However, I will have the certificate properly signed as soon as possible, and forward same to you. In future kindly send these notes here for collection, and they will be promptly paid.

"Awaiting your prompt reply, I am, Yours truly,

"[Signed]               L. T. KAVANAUGH.

"P. S. I heard today that Mr. Bowen is in New Orleans and have written, but have no definite address. I understand he is in good health. Please return receipt and oblige, Yours truly,      [Signed]   L. T. K,"

To this letter Aaron Haas & Son replied, insisting upon a health certificate. Referring to the place of payment of the note, they said: "This particular note was not payable in Memphis, but in Atlanta, and on October 8th we wrote you notifying you that it would fall due on the 15th. So we did all that we should have done, under the circumstances."

Complainants at once set about to get the certificate of health required, and, being ignorant of the whereabouts of Mr. Bowen, only succeeded in getting a certificate from him on the 13th day of November, 1904, and then for the first time they became acquainted with the fact that he had had a stroke of paralysis in the preceding spring. Complainants at once sent the certificate to Aaron Haas & Son, with letter explaining the

facts, and this was referred by them to the New York office.

After some correspondence the defendant company declared the policy forfeited because of the failure to pay at maturity the note above referred to, due October 15, 1904.

As already stated, complainants promptly tendered payment of the note due October 15, 1904, as soon as they received notice from the company. They subsequently tendered the amount of the note due January 15, 1905, and this was likewise refused. Thereupon the original bill in this case was filed, in the lifetime of Bowen. In this bill the complainants insisted that the policy had not been forfeited, but was merely suspended during the time the note remained unpaid, according to its terms, and sought an injunction restraining the defendant from asserting that the policy had become void or was in any wise forfeited. Pending these proceedings Bowen died, and thereupon an amended bill was filed, claiming a recovery upon the policy and also a penalty under the statute.

The policy contains the following provision:

"*Nonforfeitures*—That if any payment on this policy be not made when due, this policy shall lapse and be *ipso facto* null and void. But if full premiums on this policy be paid as already provided, for not less than three complete years, and the policy thereafter lapse, it can be surrendered within six months from the date of the lapse, for the amount of nonparticipating paid-up

insurance stated in the following table, subject to the conditions of this policy, except as to payment of premiums.

"That if the full premiums on this policy be paid as already provided for not less than five complete years at the option of the insured, it can be surrendered within six months from the date of lapse for the amount of cash stated in the following table"—setting out table.

The note due October 15, 1904, reads as follows:

"July 15, 1904.

Three months after date, we promise to pay to the order of the Security Trust & Life Ins. Co. $55.75, with interest at six per cent., for value received, at Atlanta, Georgia, hereby agreeing and admitting that this note is given as an extension of time for the payment of the premium, or part thereof, maturing this day on their policy on my life, but is not to be payment of said premium, or any part thereof, in any sense, nor is the same given or accepted as such, unless this note is paid at or before maturity.

"This note is given said company upon this express understanding or agreement that for any loss occurring by death after this note is due and remains unpaid, then said company shall not be liable.

"[Signed]           L. T. KAVANAUGH,
                 "W. K. KAVANAUGH."

The chancellor dismissed the bill, and complainants have appealed and assigned errors.

EWING & WILLIAMSON, for complainants.

SMITH & TREZEVANT and R. LEE BARTELS, for defendant.

MR. JUSTICE NEIL, after making the foregoing statement of facts, delivered the opinion of the Court.

1. In *Insurance Co.* v. *Hyde,* 101 Tenn., 396, 404, 405, 48 S. W., 968, the court quoted as laying down the proper rule the following from Joyce on Insurance, vol. 2, sec. 132, viz.:

"If a life insurance company has been in the practice of notifying the insured of the time when the premium will fall due, and of the amount, and the custom has been so uniform and so reasonably long in continuance as to induce the assured to believe that a clause for forfeiture for nonpayment will not be insisted on, but that the notice will precede the insistence upon the forfeiture, and the insured is, in consequence, put off his guard, such notice must be given, and, if not given, no advantage can be taken of any default in payment which it has thus encouraged, for the insured is entitled to expect the customary notification, and to mislead the insured by not giving such notice, and then insist upon a strict compliance with the conditions of forfeiture, constitutes, under such circumstances, a fraud upon the assured which the courts have refused in numerous cases to countenance"—citing *Helme* v. *Philadelphia Life Ins. Co.,* 61 Pa., 107, 100 Am. Dec., 621; *Mayer* v. *Mutual*

*Life Ins. Co.,* 38 Iowa, 304, 18 Am. Rep., 34; *Union Central Ins. Co.* v. *Pottker,* 33 Ohio St., 459, 31 Am. Rep., 555; *N. Y. Life Ins. Co.* v. *Eggleston,* 96 U. S., 572, 24 L. Ed., 841; *Insurance Co.* v. *Pierce,* 75 Ill., 426; *Grant* v. *Alabama Gold Ins. Co.,* 76 Ga., 575. Other authorities to the same effect are *Gunther* v. *New Orleans Cotton Exchange Mut. Aid Ass'n* (La.), 5 South., 65, 2 L. R. A., 118, 8 Am. St. Rep., 554; *Manhattan L. Ins. Co.* v. *Smith,* 44 Ohio St., 156, 5 N. E., 417, 58 Am. Rep., 806, 808; *Johns* v. *Insurance Co.,* 2 Wkly. Notes Cas. (Pa.), 243; *Globe Mut. Life Ins. Co.* v. *Johns,* 4 Wkly. Notes Cas. (Pa.), 131; *Meyer* v. *Knickerbocker L. Ins. Co.,* 51 How. Prac. (N. Y.), 263; *Alexander* v. *Cont. L. Ins. Co.,* 67 Wis., 422, 30 N. W., 727, 58 Am. Rep., 869; *Atty.-Gen.* v. *Cont. L. Ins. Co.,* 33 Hun (N. Y.), 138; *Heinlein* v. *Imperial L. Ins. Co.* (Mich.), 59 N. W., 615, 25 L. R. A., 627, 45 Am. St. Rep., 409; *Elgutter* v. *Mut. Res. Fund L. Ass'n,* 52 La. Ann., 1739, 28 South., 289; *Mut. Res. Fund L. Ass'n* v. *Hamlin,* 139 U. S., 297, 11 Sup. Ct., 614, 35 L. Ed., 167.

In *Mayer* v. *Insurance Co.,* supra, the underlying reason is thus stated:

"Every law should be reasonable, and it is reasonable only when it is adapted to human conduct. Courts should not so administer the law as to require of individuals a course of conduct which, to a majority of reasonable and right-minded men, is unusual and unnatural. Indeed, it would be impossible long to maintain a law which is at variance with the judgment and sense

Kavanaugh v. Insurance Co.

of justice of a majority of those upon whom it operates.

"Now, it must strike every reasonable mind that a majority of ordinarily prudent persons, who had been customarily notified of the time when premiums upon their policies became due, and who had received no notice of an intention to abandon the customary course, would, in a particular case, expect and await a like notice. And, if such is the reasonable and natural result of the previous dealings of the company, it must govern its future conduct so as to accord with the reasonable expectation thus created; that is, having furnished a policy holder reasonable ground for expecting that he will be advised when his premium becomes due, the company must continue to give such notice until it furnishes the assured notice that he need no longer expect it. Any other construction would make the law a trap to insnare the unwary." *Mayer* v. *Mut. Life Ins. Co.*, 18 Am. Rep., 34, 38.

In the absence of a statute, or of an express term in a contract, making sufficient the mere mailing of a communication containing information of the approaching maturity of the premium, it must appear that such communication was received before it can be operative as notice, and thereby effect a forfeiture of the policy upon failure to pay at the day. *Brattleboro East Soc.* v. *Reed*, 42 Vt., 76; *Cont. F. Ins. Co.* v. *Adams*, 8 Ky. Law Rep., 269; *Protec. L. Ins. Co.* v. *Palmer*, 81 Ill., 88; *Castner* v. *Farmers' Mut. F. Ins. Co.*, 50 Mich., 273, 15 N. W., 452; *Burhans* v. *Corey*, 17 Mich., 282; *Mullen* v. *Dor-*

*chester Ins. Co.,* 121 Mass., 171; *Wachtel* v. *Noah Widows' & Orphans' Ben. Soc.,* 84 N. Y., 28, 38 Am. Rep., 478; *McCorkle* v. *Texas Ben. Ass'n,* 71 Tex., 149, 8 S. W., 516; *Merriman* v. *Keystone Mut. Ben. Ass'n,* 63 Hun, 635, 18 N. Y. Supp., 305; *Id.,* 138 N. Y., 116, 33 N. E., 738; *Crown Pt. Iron Co.* v. *Aetna Ins. Co.,* 127 N. Y., 608, 28 N. E., 653, 14 L. R. A., 147; *Amer. F. Ins. Co.* v. *Brooks,* 83 Md., 22, 35, 34 Atl., 373; *Peabody* v. *Satterlee,* 166 N. Y., 174, 59 N. E., 818, 52 L. R. A., 956; *United States Mut. Acc. Ass'n* v. *Mueller,* 151 Ill., 254, 37 N. E., 882; *Cronin* v. *Sup. Council Royal League* (Ill.), 65 N. E., 323; *State* v. *Ins. Co.,* 106 Tenn., 282, 294, 295, 61 S. W., 75.

We shall now refer more particularly to some of the foregoing authorities.

In *Brattleboro East Society* v. *Reed,* it was held that notice of an assessment, sent by mail pursuant to a condition for a forfeiture in case of nonpayment after six months' notice, ran, not from the time when the notice was deposited in the post office, but from the time when the party received it.

In *Continental Fire Ins. Co.* v. *Adams,* it was held that the mere act of posting notice through the mail did not operate as notice to the insured.

In *Protect. L. Ins. Co.* v. *Palmer,* it appeared that the policy provided the assured should within thirty days from the date of notice pay to the company the assessment, collection costs, and annual dues, and a failure to do so should render it null and void and of no effect. It

was held that the provision concerning thirty days' notice meant from the day notice was received by the party to whom it was sent, and not from the day on which it was dated or mailed.

In *Castner* v. *Farmers' Mutual F. Ins. Co.*, it appeared that it was provided by the charter of the mutual company that its members should be "notified by the secretary, or otherwise, either by circular or a verbal notice," of assessments made upon them, and if payment was not made in sixty days the insurance should be suspended. Notice was mailed in this case June 3d. The fire occurred October 5th. Plaintiff claimed that notice was not received until some time in September. It was admitted that within sixty days of its receipt a tender of the amount due upon the assessment was made and refused. It was held that the policy was not liable to suspension until the expiration of the specified time after notice was received.

In *Burhans* v. *Corey* (not an insurance case, but germane upon the subject of notice by mail), it was held that the mere mailing of notice was not sufficient; that it must have been received. In the opinion of the court it is said: "A party can be in no actual default who proceeds to comply with a notice as soon as he receives it, and to hold him guilty of a constructive default, when he has always been willing to do his duty, can only be allowed where he has consented to run the risk of a safe transmission through a given channel." *Id.*, 17 Mich., 285.

In *Mullen* v. *Dorchester Ins. Co.,* it appeared that there was a notice of assessment sent to a policy holder by mail, but not received by him. The directors of the company afterwards voted to cancel all policies the holders of which had not paid the assessment, and notice of such cancellation was sent to the policy holder by mail, but was not received. It was held there was no forfeiture.

In *Wachtel* v. *Noah Widows' & Orphans' Ben. Soc.,* 84 N. Y., 28, 38 Am. Rep., 478, it was held: "In the absence of any agreement by the member or any provision in the charter or by-laws for a different mode of service, it should be made personally, as is required at common law, where the object is to deprive a party of his rights or property; or, if that can be dispensed with, in such other mode as may be likely to effect its object."

In *McCorkle* v. *Texas Ben. Ass'n,* it appeared there was a by-law that required notice of assessment to be sent to each member, and this by-law provided that: "Any person who shall fall in arrears for dues or contributions after thirty days' notice shall cease to be in good standing and shall forfeit all rights and claims to any and all benefits of the association." It was the custom of the officer charged with the duty to mail such notice to each member. It was held that a reasonable construction of the by-laws required that notice should be in fact given to a member before a forfeiture would result from a failure to pay dues, etc., and that mailing to a member through the post office was not such notice.

Referring to the case of *Castner* v. *Farmers' Mut. Ins. Co.*, supra, the court said: "The rule laid down by the Michigan court, we think, is fair and just to both parties, and should be followed. To deprive a person of his property rights without any notice is contrary to reason, and such a claim should not be enforced by the courts unless the terms of the contract plainly require it."

In *United States Mut. Acc. Ass'n* v. *Mueller,* it was held that, where the by-laws of the association contained the provision that "payments are to be made . . . within thirty days of the date of the notice thereof," this meant from the date of the service of the notice, and not from the date of the writing; and in *Cronin* v. *Supreme Council Royal League,* it was held that, when the by-laws of a beneficial association provided that payments of assessments should be made within thirty days from the date of the notice, a member was not in default until thirty days from the time notice was received.

In *Crown Point Ins. Co.* v. *Aetna Ins. Co.*, the question was whether the notice of the cancellation of a policy of insurance would date from the mailing of the policies or from the actual reception of the notice. Speaking to this subject the court said:

"It is contended by the defendants that the mailing of the policies with a letter stating the object sufficed to cancel them, because it was equivalent to the acceptance of a proposition by mail; and the following cases are cited, among others, in support of the position: *Trevor*

v. *Wood,* 36 N. Y., 307, 93 Am. Dec., 511; *Vassar* v. *Camp,* 11 N. Y., 441; *Mactier* v. *Frith,* 6 Wend. (N. Y.), 103, 21 Am. Dec., 262; *Brisban* v. *Boyd,* 4 Paige (N. Y.), 17, 3 L. Ed., 322. These were cases of contracting wholly by letter or telegram. It was long ago held that, if an offer made by mail is accepted by mail, the contract is complete from the moment the letter of acceptance is mailed, even if it is never received. *Vassar* v. *Camp,* supra. Those cases have no application here, because no negotiation was pending, and no contract was proposed. The plaintiff did not make an offer to the insurance companies that might or might not be accepted. It sought to do an act that would be binding on the companies, whether they were willing or not. That act was a surrender of the policies with the request that they be terminated, and the act could not be complete until the request reached the companies or their agent. The policies and notice might have been sent by a messenger, who would have been the agent of the plaintiff for that purpose. Having been sent by mail, it was none the less the agency of the plaintiff than if a messenger had been selected. It was necessary for the plaintiff, in order to terminate the policies, to have its notice actually reach the companies or their representatives, and the instrument selected for that purpose was the agent of the plaintiff, not of the defendant. If the plaintiff lost control of the letter as soon as it was mailed, that fact has no bearing except upon the nature of its relation to the agent that it empowered to deliver the package. It

seems, however, that the writer of a letter may withdraw it from the office in which it is deposited, or from the office to which it is sent. United States Postal Laws & Regulations, pp. 531, 533. If the letter never reached the companies, they would not have been bound, or, if it had reached them, after a long delay, they would have been bound only from the date of receipt. So far as the delivery of such a letter is concerned, the law does not recognize the agency of the mail as of any higher or more binding character than that of an express company or a private individual, although it may presume that a letter duly mailed was received by the person to whom it was properly addressed."

In *State* v. *Insurance Co.,* it was held that delivery of a letter or package containing several premiums on a life policy, to a post office or carrier within this State addressed to the company at a point outside of the State, did not constitute delivery or payment of such renewal premium to the insurance company within the State, and that such delivery and payment did not become complete and effective until actual receipt of the premiums by the company at its office, and that the money remained in the meantime at the risk of the sender.

It is insisted that the contrary rule is laid down in the following authorities: May on Insurance, vol. 2, sec. 356a; Bacon on Insurance, sec. 381; *Lothrop* v. *Insurance Co.,* 2 Allen (Mass.), 82; *Survick* v. *Valley Mut. L. Ins. Co.* (Va.), 23 S. E., 223; *McKenna* v. *Insurance*

117 Tenn—4

*Co.,* 73 Iowa, 453, 35 N. W., 519; *Epstein* v. *Mutual Aid & Benev. Ass'n,* 28 La. Ann., 938; *McConnell* v. *Prov. Sav. L. Ins. Co.,* 92 Fed., 769, 34 C. C. A., 663; *Insurance Co.* v. *Eggleston,* 96 U. S., 572, 24 L. Ed., 841; *Insurance Co.* v. *Doster,* 106 U. S., 30, 1 Sup. Ct., 18, 27 L. Ed., 65; *Insurance Co.* v. *Hyde,* 101 Tenn., 403, 48 S. W., 968; *Otis* v. *Payne,* 86 Tenn., 663, 666, 8 S. W., 848.

In the section referred to in May on Insurance, it is said: "In regard to the effect of a habit or usage of sending notice of the date when each premium becomes due, opinions differ. On the one hand, it is held that, where from the course of dealing between the parties the insured has a right to believe that notice will be given to him of the amount due and the time it is to be paid, the company cannot, in the absence of such notice, set up the failure to pay. Usage makes the giving of notice a part of the contract. If, where there is a usage to give notice, none is sent, payment of the premium within a reasonable time will save forfeiture." Further along in the same section, it is said: "A failure of notice to pay a premium to reach the insured does not prevent the avoidance of the policy, if the notice was properly mailed and directed"—citing *Lothrop* v. *Greenfield Stock & Mut. F. Ins. Co.,* 2 Allen (Mass.), 82. "So, under the Iowa statute, requiring notice to be given to the makers of premiums notes when they fall due, the service is complete on mailing a registered letter, or at least when it should be received in due course of mail"—citing *McKenna* v. *State Ins. Co.,* 73 Iowa, 453, 35 N. W., 519.

In *Lothrop* v. *Greenfield, etc., Ins. Co.,* supra, it appeared that the policy which controlled the matter contained a provision that: "If the assured should neglect for the term of thirty days to pay his premium note, or any assessment thereon, when requested to do so, by mail or otherwise," etc.

In *McKenna* v. *State Ins. Co.,* the court had under consideration a statute which provided that: "Such notice may be served either personally or by registered letter addressed to the assured at his post office address named in or on the policy," etc.

In *Survick* v. *Valley, etc., Ins. Co.,* it appeared that the by-laws of the defendant company provided that any member failing to pay his *pro rata* assessment within thirty days from notification in person, "or from date of mailing same to his address," should forfeit, etc. The decision of the court was placed expressly upon the provision as to mailing.

So, in *Epstein* v. *Mut. Aid & Ben. L. Ins. Ass'n,* the decision was based upon the ground that the policy provided that the insured should "be notified by written notice deposited in the post office in the city of New Orleans, addressed to such address as has been left in writing at the office of the association with the secretary."

*McConnell* v. *Prov. Savings L. Ins. Co.* was also based on a statute providing for notice by mail.

The case of *New York Life Ins. Co.* v. *Eggleston* does not sustain the defendant's contention. It is true that

the circuit judge charged the jury that, if the notice was mailed within such time as the insured would in due course of mail have received it, then he should be held to have received it. This portion of the charge, however, was not drawn in question or considered by the supreme court; but a previous portion inclosed in brackets which treated of the custom to give notice. In addition, the court, at the close of the opinion adverted in pointed terms to the fact that the insured had never received any notice. There was evidence that notice had been mailed, and also evidence that it had not been received. In the case of *Phoenix Mut. L. Ins. Co.* v. *Doster,* there is some language in the opinion, used in an incidental way, supporting the defendant's contention here; but in the later case of *Mut. Res. Fund Ass'n* v. *Hamlin,* supra, the same justice suggested a doubt of the correctness of that view, in the following language: "Whether the clause in the certificate of insurance relating to notice means anything more than that proof of mailing a notice according to the defendant's usual course of business, directed to the insured at the post office address as appearing upon its books, made a *prima facie* case of compliance upon its part with the terms of the contract, leaving the insured to prove, in order to prevent a forfeiture of his membership, that the notice was not in fact received by or for him, we need not determine."

The passage cited from Bacon on Benefit Society and Life Insurance is based on cases dealing with contracts

which by their terms provided that notice might be given by mail.

In the case of *Insurance Co.* v. *Hyde,* supra, it is true the charge of the circuit judge contained the expression that the assured was not bound to pay "until such notice was mailed;" but no point was made upon that feature of the charge, and the mind of this court was not directed at all to the subject, and it was not dealt with in the opinion.  That case is therefore not authority for defendant's contention.

Nor is the case of *Otis* v. *Payne* applicable.  In that case the court had under examination a negotiation conducted by mail.  Such a case stands on a rule different from the one we now have before us.  1 Page on Contracts, sec. 52.  And see *Pennsylvania Lumberman's Mut. F. Ins. Co.* v. *Meyer,* 126 Fed., 352, 61 C. C. A., 254.  Here we have not a negotiation, but a claim that a right already acquired was forfeited by miscarriage of the mail; that the mere posting of a letter properly stamped and addressed should be treated as notice and a valuable right thereby defeated, although such letter never reached its destination, no information was conveyed by it, and it in no sense performed the purpose it was designed to perform.

Before such a conclusion can be properly reached, it seems to us there should be direct statutory provisions requiring it, or the clear terms of a contract.

The purpose of a letter is to give information.  If it never reaches its destination, it fails of its purpose.  To

say that nevertheless it must be held to have accomplished the purpose could only be justified, as we have said, by the terms of a statute or of an express contract authorizing such result. In the absence of these, it would not be reasonable to infer that a man would agree that his ignorance of a fact should fix him with all of the consequences of knowledge.

It is said in the present case that the custom had been to give notice by mail, and that, when a letter was properly posted, all of the requisites of the custom were complied with. This is not a sound view. All of the previous letters had reached their destination, and had conveyed the information they were designed to convey. The custom was not merely to mail, but to give notice by mail, to actually convey the information intended to be delivered by that means.

We see no hardship to the insurer in this view of the matter. It is surely not admissible to suppose that any insurance company is alert for occasions to declare forfeitures and thereby to keep moneys for which no equivalent has been rendered. The company is entitled to prompt payment of premiums. It is only by such payments that its business can be carried on. The power to declare forfeitures for nonpayment is given to effectuate this purpose. But it is a perversion of the purpose when forfeitures are in themselves made an object or end to be attained. Therefore the courts have always seized upon every reasonable circumstance presented in a case to prevent the taking effect of a forfeiture. In the case of

a miscarriage of the mail, the insured performs his duty if, upon subsequently receiving notice, he promptly complies by paying the premium due. *Grant v. Alabama Gold L. Ins. Co.,* 76 Ga., 583. The complainants in the present case did so comply and thereby saved the forfeiture.

2. Aside from the question just considered, and passing without special remark the peculiarity of the policy, in that it places the provision for forfeiture for nonpayment of premiums under the misleading head of "nonforfeitures," we are of opinion that under a proper construction of the policy considered in connection with the language of the notes and the correspondence at the time, it was intended that the rights of the parties should be measured by the provision embodied in the notes, the last sentence of which contained a summation of the agreement of the parties under the new phase it had assumed. A portion of the premium had been paid in cash, and notes executed for the residue, which were enforceable by the company. This clause reads: "This note is given said company upon this express understanding or agreement that for any loss occurring by death after this note is due and remains unpaid, then said company shall not be liable." The effect of this was that, if the complainants permitted this note to go to maturity and remain thereafter unpaid, they took the risk of the death of the insured, Bowen, thereafter and pending such default. The rights of the parties were reciprocal. The defendant had the right to collect and

thus restore the insurance, and the complainants the right to pay, with the same result. But in the meantime the advantage was with the company in one aspect, since, if Bowen had died while the note still remained unpaid, the insurance would have been lost.

The foregoing seems the most reasonable construction, since under no other can full effect be given to the words, "and remains unpaid."

Even if we did not deem this construction the best, still, if a reasonable one, we should feel bound to adopt it, when considering whether a forfeiture should be allowed, since, when dealing purely with the question of forfeiture, "the rule is that if policies of insurance contain inconsistent provisions, or are so framed as to be fairly open to construction, that view should be adopted, if possible, which will sustain rather than forfeit the contract." *McMaster v. N. Y. L. Ins. Co.*, 183 U. S., 25, 22 Sup. Ct., 10, 46 L. Ed., 64. And see *Insurance Co.* v. *Dobbins,* 114 Tenn., 233, 234, 86 S. W., 383; *Schmidt* v. *German Mut. Ins. Co.* (Ind. App.), 30 N. E., 939; *Burkhard* v. *Travelers' Ins. Co.,* 102 Pa., 262, 48 Am. Rep., 205.

For cases construing fairly similar clauses, substantially as herein construed, see *Equitable Ins. Co.* v. *Harvey,* 98 Tenn., 636, 639, 40 S. W., 1092; *Williams* v. *Albany City Ins. Co.,* 19 Mich., 451, 2 Am. Rep., 95; *Hooker* v. *Cont. Ins. Co.* (Neb.), 96 N. W., 663; *Houston* v. *Farmers' & Merchants' Ins. Co.,* 64 Neb., 138, 89 N. W., 635; *Robinson* v. *Insurance Co.,* 76 Mich., 641, 43 N. W.,

647, 6 L. R. A., 95; *Hummel & Company's Appeal,* 78 Pa., 320; *Matthews* v. *Insurance Co.,* 40 Ohio St., 135; *McEvoy* v. *Mich. Mut. L. Ins. Co.,* 2 Ohio Cir. Dec., 329, 3 Ohio Cir. Ct. Rep., 569; *East Texas F. Ins. Co.* v. *Perkey,* 5 Tex. Civ. App., 698, 24 S. W., 1080. And see *Am. Ins. Co.* v. *Klink,* 65 Mo., 78.

*Ressler* v. *Insurance Co.,* 110 Tenn., 411, 75 S. W., 735, is not in conflict with what we have herein decided.

No loss occurred by the death of Bowen, while the note was in default. That event did not occur until a considerable time after complainants had made a full tender of the amount due upon the notes. Hence there was no forfeiture.

It results that the decree of the chancellor denying complainants relief was erroneous, and must be reversed, and judgment must be rendered here for the amount of the policy and interest.

The points decided being decisive of the case, we need not consider the other points raised by the facts set forth in the statement and argued in the briefs of counsel.

We do not think this is a proper case for the imposition of the statutory penalty upon insurance companies for the interposition of frivolous defenses.