HOBSON v. WISE COUNTY HOME PROTECTIVE ASS'N.
(No. 9127.)

(Court of Civil Appeals of Texas. Ft. Worth. June 7, 1919.)

1. EVIDENCE ⬥═71—PRESUMPTION—RECEIPT OF MAIL MATTER.

In an action on a mutual assessment insurance policy, testimony of the secretaries of defendant association that they mailed notices of assessment to insured, with postage prepaid, and properly addressed to insured at the post office address given by him on the records of the association, constituted prima facie proof that insured received the notices.

2. INSURANCE ⬥═373(1)—MUTUAL BENEFIT INSURANCE — AGREEMENT TO COLLECT ASSESSMENTS—RIGHT OF RELIANCE.

After receiving several notices that assessments on him had not been paid, the holder of a policy in a mutual assessment insurance association had no right to continue to rely on the agreement of the secretary of the association to collect assessments on the policy holder by checks on the bank account of a brother-in-law of the policy holder.

3. INSURANCE ⬥═373(1)—MUTUAL BENEFIT INSURANCE—AGREEMENT AS TO ASSESSMENTS—RIGHT OF RELIANCE.

An agreement on the part of the former secretary of a mutual assessment insurance association to collect assessments on a policy holder by check on his brother-in-law's account did not justify either the brother-in-law or the policy holder in relying on the arrangement after a new secretary had taken office and notified the policy holder that four assessments against him had not been paid.

Appeal from District Court, Wise County; F. O. McKinsey, Judge.

Suit by Mrs. Virda Hobson against the Wise County Home Protective Association. From judgment for defendant, plaintiff appeals. Affirmed.

McMurray & Gettys, of Decatur, for appellant.

R. E. Carswell, of Decatur, for appellee.

DUNKLIN, J. Mrs. Virda Hobson instituted this suit against the Wise County Home Protective Association No. 1, a private corporation, to recover the amount stipulated in a life insurance policy issued by the defendant upon the life of William Hobson, husband of plaintiff, and payable to her as his surviving wife at his death. From a judgment in favor of the defendant, the plaintiff has appealed.

The case was tried by the court without a jury, and the trial judge filed the following findings of fact and conclusions of law:

"Findings of Fact.

"(1) I find that the defendant is a corporation duly incorporated under the laws relating to the incorporation of mutual assessment home insurance companies, as provided for in chapter 5 of title 71, Rev. Civil Statutes, its original articles of incorporation having been duly filed on March 18, 1902, and amended articles on February 6, 1907, providing for death benefits to be raised by assessments upon its members, such benefit, in case of the death of a member in good standing, being the amount of one assessment of $1 each upon the members in good standing, but not to exceed the total sum of $1,000.

"(2) That upon organization defendant adopt-

ed a constitution, of which section 5 provides as follows:

" 'The board of directors shall levy an assessment of $1 upon the death of each member, and, when there are two or more deaths of members at one time for which no assessments have been made, said board may order the secretary to issue a double assessment.'

"(3) Among other things, its by-laws provide as follows:

" 'Sec. 7. The books of the association shall be kept by him [the secretary], and he shall notify all members by post card of the assessment made by the board of directors.'

" 'Sec. 19. All assessments levied by the board of directors must be paid within fifteen days from the date of such levy, and any member failing to pay such levy within said fifteen days shall stand suspended and will no longer be entitled to any of the benefits of the association.'

" 'Sec. 19. On the 16th day from the date of the levy of each assessment the secretary shall notify all members who have failed to pay such assessment of their suspension, and if within ten days from the date of such notice any member shall pay two dollars, one of which shall be placed in the beneficiary fund and one dollar in the excess fund, such member shall be reinstated.'

"(4) I find that deceased, W. M. Hobson, became a member of defendant association by his written application dated October 21, 1904, in which, as required thereby, he gave his post office address as Decatur, Texas, rural route No. 1, and a certificate of membership was issued to him containing the following stipulation:

" 'That the assured agrees to pay assessments levied by the directors of $1 upon the death of each member, and not to exceed $1 a year for expenses, within fifteen days of the date of call; and agrees further that failure to pay any assessment so levied within fifteen days from date of call shall forfeit all claims as a member of this association.'

"The plaintiff, Virda Hobson, was named therein as beneficiary, she being the wife of deceased; and it was further stipulated that, 'if the said W. M. Hobson should die in good standing in the association,' the association would pay his beneficiary one assessment of $1 per member on its membership, not to exceed the sum of $1,000.

"(5) I find that said insured paid all assessments levied from the time he became a member until February 25, 1916; that on said date a double assessment of $2, designated as assessment No. 121, was duly levied to cover loss resulting from the death of two members, of which insured was given due notice by the secretary, said notice being dated February 25, and stipulating that failure to pay said assessment on or before March 16, 1916, would cause his suspension.

"(6) I find that on the following dates respectively, to wit, April 28, 1916, May 26, 1916, July 28, 1916, and September 28, 1916, the board of directors duly levied other assessments on the members of defendant and that the deceased, W. M. Hobson, was duly notified of the same as in assessment No. 121, and that on each said written notice he was also notified of his arrearages.

"(7) I find that the defendant made no response to any of the notices referred to in paragraphs 5 and 6 above, and that he paid none of said assessments, but failed to pay any of the same.

"(8) I find that about the 10th of February, 1917, the clerk of defendant corporation wrote deceased a card showing the amount of his arrearages, and urging him to pay the same, and that about ten days thereafter he wrote deceased a letter reminding him again that he was in arrears and suspended, and urging him to reinstate himself. The deceased made no response to these communications, and I conclude that he had abandoned his policy and knowingly permitted the same to lapse, and the defendant company thereafter treated and considered deceased as suspended and his policy as finally lapsed; that assessments having been made in July and September, 1917, the deceased was not notified thereof, his name having been dropped, and he not being considered as a member of the association.

"(9) The defendant died about the 1st day of October, 1917, proper proof of death was made in due time and payment of policy demanded, which being refused, this suit was brought thereon.

### "Conclusions of Law.

"(1) I conclude as a matter of law that the deceased, Hobson, was not at his death a member in good standing of the defendant company, but had ceased to be a member of same, and that his policy therein has lapsed for nonpayment of assessments, and that plaintiff cannot recover."

In her original petition plaintiff alleged that William Hobson duly paid all charges and dues that accrued upon his policy up to the date of his death, and had duly complied with all the provisions of the policy, and was a member of the defendant association in good standing at the time of his death.

In its answer the defendant specially denied that Hobson was a member of the association in good standing at the time of his death. The failure to pay assessments, which the trial judge found he did fail to pay, was specially pleaded, and by reason of such failure the defendant pleaded that the policy had lapsed and was no longer of any legal effect when Hobson died.

In reply to the answer of the defendant, plaintiff filed a supplemental petition, in which she alleged that if Hobson failed to pay assessments and dues as alleged in defendant's answer, then the defendant is estopped to claim a forfeiture of the policy as a result thereof, by reason, substantially, of the following facts: According to allegations in the supplemental petition, the membership of the defendant association was confined to citizens of Wise county. The defendant maintained a secretary at Decatur, whose duty it was to notify members of their assessments and to collect the same when due. At all times it was the custom of the

secretary to collect the assessments of some of the members by drawing a check upon the account of those members in any bank in Decatur where such account was kept; and it was the custom of such members to rely upon the secretary to make such collections in that manner. J. L. Gentry, a brother-in-law of Hobson, who kept an account with the First National Bank of Decatur, made an arrangement with defendant's secretary whereby the latter would draw checks on Gentry's account in the bank to pay all assessments that might be made against Hobson as a member of the association which Hobson might fail to pay up to the last day allowed for such payment. Said arrangement and promise on the part of the secretary to so collect assessments against Hobson were made prior to the levy of assessments alleged in the defendant's answer to have been unpaid, and said Hobson and plaintiff and Gentry all relied upon the custom and practice of the secretary to collect assessments in that manner, and upon his promise to so collect assessments against Hobson, and up to the date of Hobson's death they believed that the same had been collected in that manner; and if checks had been so drawn on Gentry's account for such assessments they would have been duly honored by the bank, and the money paid to him therefor. Plaintiff further alleged that defendant gave no notice to Hobson of any default or suspension, and that if he had received any such notice he would have been reinstated as a member in accordance with the by-laws of the association.

[1] By different assignments appellant has challenged the findings of fact made by the trial judge in paragraphs 5, 6, 7, and 8 shown above, on the ground that they were not warranted by the evidence. One of the contentions is that the testimony of the secretaries Foster and White that they mailed certain notices of an assessment to Hobson, and of his failure to pay the same, was not sufficient to show that Hobson received those notices. We think there is no merit in that contention. The secretaries testified that they mailed such notices to Hobson with postage prepaid, and properly addressed to Hobson at the post office address given by him on the records of the association, and that Hobson paid no attention to such notices. That testimony constituted prima facie proof that Hobson received the notices.

[2] We find no specific testimony in the record to the effect that the notices, mailed to Hobson by the secretaries, of the fact that Hobson was in arrears in the payment of his assessments, contained the statement that he had been suspended, yet we are of the opinion that that fact would make no material difference, since, according to by-law No. 18 of the association, shown in the court's findings as No. 19, the failure of a member to pay any assessment within fif-

teen days after notice of same automatically suspended him as a member, and it must be presumed that Hobson had notice of that by-law. Furthermore, as shown by section 19 of the by-laws which is copied in the court's findings, it appears that the only purpose of giving to a member notice of his suspension was to give him an opportunity to be reinstated, and we are of the opinion that the failure of Hobson to pay any attention to the several notices shown in the court's findings of assessments against him and his arrearages upon his assessments was sufficient to support the court's finding that he had elected to abandon his policy. After receiving the different notices that the assessments had not been paid, it cannot be said that he had the right to continue to rely upon Foster's agreement to collect those assessments by checks on Gentry's bank account, and especially is this true after Foster ceased to be the secretary and had been succeeded by White. It is true, as asserted in appellant's brief, that Secretary Foster testified that J. L. Gentry, brother-in-law of Hobson, told him to draw checks upon his (Gentry's) account in the bank for any assessment that might be made against Hobson which Hobson did not pay, and that he agreed to do so, and, according to the testimony of Gentry, if said checks had been drawn they would have been honored; but Foster further testified that Gentry's permission that such checks might be so drawn was upon the condition that he (Foster) should first notify Gentry of the assessment, and that he (Foster) forgot the arrangement so made, and failed to mention the matter to Gentry. Gentry testified as follows with respect to the arrangement with Foster, the secretary, for the payment of Hobson's dues:

"The agreement between him and me was that he would not let it fall due; he would notify me; he agreed to do that; he would notify me if Hobson did not pay it. That was the arrangement I made with him."

He further testified that he kept a regular account with the First National Bank at Decatur, where he had money to his credit at all times; that the bank rendered to him statements of his account, but that he did not examine the same to see whether or not Hobson's assessments had been paid. He further testified as follows:

"I never inquired at the bank to see whether Hobson's assessments had been paid out of my account. Foster told me he would look after it. I did not think it necessary. I expected he would notify me. It was at my own suggestion that I made that arrangement with Foster. Mr. Hobson had asked me to look after it for him. I told Hobson I would do that, twice or three times."

And plaintiff also testified that Mr. Hobson, her husband, told her that Gentry had

assured him that he (Gentry) would pay all the assessments for Hobson.

[3] The fact that the assessments were duly levied in accordance with the constitution and by-laws of the association, and that the assessments shown in the court's findings were never paid, was established by uncontroverted proof. As we construe appellant's assignments, it is insisted that the agreement on the part of Secretary Foster to collect the assessments from Gentry should be construed as having the same legal effect as an actual payment of the assessments; but we think it clear that that contention cannot be sustained. At best, such proof could only be looked to to support the plea of waiver and estoppel urged by plaintiff in her supplemental petition to the defense alleged in defendant's answer that the policy had lapsed before Hobson's death for nonpayment of the assessments. The trial judge did not pass upon that plea, and the record shows no request by appellant for a finding upon that issue. Nor can we now sustain the plea of estoppel on the ground that it was conclusively established by proof. In the first place, the alleged arrangement to collect Hobson's dues from Gentry was made with Foster, who was then secretary, but who was succeeded by Lory D. White, another secretary, and there is no proof to show that White had any notice of such arrangement, or that he made a similar one with Gentry or any one else. And according to White's testimony, after he went into office he mailed a notice to Hobson, and also wrote a letter telling him that he was in arrears for four assessments, and insisting that he pay up those assessments and remain a member of the association, but that Hobson paid no attention to those communications. The agreement on the part of Foster, the former secretary, to collect the assessments by check on Gentry's account, could not justify either Gentry or Hobson to still rely upon that arrangement after White had taken the place of Foster as secretary, and had notified Hobson that four assessments against him had not been paid. Furthermore, while Foster testified to his custom of arranging with different members of the association for the collection of their assessments by drawing checks upon their accounts, and agreeing with them thus to look after the payment of their assessments, yet we have found no proof in the record that notice of such custom was brought to the attention of the board of directors of the defendant association, and there is no proof of any authority on the part of the secretary to thus waive the requirements of the by-laws that all assessments must be paid within the period of time prescribed.

The fact that it was specifically provided in the by-laws that notice to members of assessments made against them should be given by post cards, mailed to them, as shown in the trial judge's findings, distinguishes this case from McCorkle v. Texas Benevolent Association, 71 Tex. 149, 8 S. W. 516; and Kavanaugh v. Security Trust & Life Insurance Co., 117 Tenn. 33, 96 S. W. 499, 7 L. R. A. (N. S.) 253, 10 Ann. Cas. 680.

For the reasons indicated, all assignments of error are overruled and the judgment is affirmed.