# THE PROTECTION LIFE INSURANCE COMPANY

### *v.*

## JOHN R. PALMER, Admr. etc.

1. SERVICE OF PROCESS—*on agent of corporation.* On motion to quash a return of service of a summons against a corporation, which shows service on one as agent, where the agency is denied, the defendant must disprove the agency, or the motion will be overruled.

2. ABATEMENT—*to reach defective service.* The question whether a summons has been properly served, or served on a proper person, as an agent of a corporation, can not be raised by plea in abatement. Such a plea does not furnish a better writ.

3. APPEARANCE—*effect on service.* By filing a demurrer to the declaration, the defendant is in court, whether the service is sufficient or not.

4. ASSUMPSIT—*upon sealed policy of insurance.* Under the present Practice Act, assumpsit will lie upon a sealed policy of insurance, the distinction between sealed and unsealed instruments being abolished as to the form of action.

5. EVIDENCE—*presumption from stipulation as to what was considered.* Where a stipulation in an action upon a life policy of insurance was, "that this cause was submitted to the court on the following agreed evidence," and stated that the policy and letters of administration should go in evidence: *Held*, that this was equivalent to saying they should be considered in evidence, and it would be presumed they were, in the absence of a statement to the contrary in the bill of exceptions.

6. PRESUMPTION—*as to sufficiency of evidence.* Where the record shows that a policy of insurance was in evidence, but it is not set out in the bill of exceptions, it will be presumed that its provisions warranted the judgment rendered, in an action on the policy.

7. NOTICE—*what is to be taken as its date.* Where a policy of insurance, providing for assessments, requires that the money must be received by the company in thirty days from the date of the notice thereof, the date will be construed to mean the day it is delivered or received, and not the date written in the notice, or the date it is mailed.

8. TIME—*how computed when act is to be done within so many days.* Where a party insured is to make payment of an assessment within thirty days from the date of the notice thereof, the day on which it comes to him will be excluded.

9. INSURANCE—*right to declare forfeiture after death of assured.* Where the condition of a life policy of insurance is, that the assured shall, within thirty days from the date of notice, pay any assessment, etc., against him, and a failure to do so shall render the policy void, if the party dies within thirty days after receiving notice of an assessment, the company insuring will have no right to declare a forfeiture for non-payment within the thirty days.

APPEAL from the Circuit Court of McLean county; the Hon. THOMAS F. TIPTON, Judge, presiding.

Messrs. HAINES & TRIPP, for the appellant.

Messrs. ROWELL & HAMILTON, and Mr. G. S. ESTERBROOK, for the appellee.

Mr. JUSTICE WALKER delivered the opinion of the Court:

This was an action of assumpsit, brought by appellee, on a policy of insurance, against appellant, in the McLean circuit court. Appellant filed a motion to quash the return of service, which was overruled by the court. A plea in abatement to the service was filed, but, on motion, the court struck it

from the files, and thereupon a demurrer to the declaration was filed, but was not decided. Appellant then filed the plea of the general issue, and a stipulation that any evidence might be introduced which would be admissible under properly drawn pleas.

A trial was had by the court, a jury having been waived, by consent of the parties. The court found the issues for the plaintiff, and assessed the damages at $2815, and, after overruling motions for a new trial and in arrest of judgment, rendered a judgment in favor of plaintiff and against defendant, on the finding, and it appeals to this court.

The questions as to the motion to quash the return and summons are not well taken, as there was no evidence upon which to base the motion. The sheriff had returned that McDougle, upon whom the service was had, was the agent of the company, and there is nothing in the record to show he was not; and hence the court could not do otherwise than overrule the motion.

Nor was there error in striking the plea in abatement from the files. Whether the summons is or not properly served, or served on a proper person, can not, as all know, be raised by plea in abatement. The agent is not a party to the suit, and whether he is in the employment of the company or not, does not affect the parties to the suit. If he is not an agent, that fact does not give a better writ. If the return was quashed, another writ precisely similar would issue. A better service might be had, but not a better writ. The court did not, therefore, err, in striking the plea from the files.

By filing the plea of the general issue, appellant, as all know, waived its demurrer, and it was in court by filing the demurrer, whether there had or not been service at all.

The 19th section of the Practice Act, R. S. p. 777, provides that, "Any deed, bond, note, covenant or other instrument under seal    *    *    *    may be sued or declared upon    *    *    *    as heretofore, or in any form of action in which such instrument might have been sued and

declared upon,      *      *      *      if it had not been under seal," etc.

It then follows, although the policy was under seal, an action of assumpsit can be maintained upon it under this statute. Had the policy not been under seal, assumpsit would have unquestionably been the proper action, and this section has abolished the distinction between sealed and unsealed instruments, as to the form of action. The motion in arrest was, therefore, properly overruled.

It is, however, objected that the policy of insurance and letters of administration were not read in evidence, and hence there was nothing upon which to base the finding and judgment. The stipulation is, that "this cause was submitted to the court on the following agreed evidence." It then states that the policy of insurance and letters of administration shall go in evidence. Under this stipulation, unless the bill of exceptions showed that these papers were not read in evidence, we are compelled to infer they were. It was stipulated, not that appellee might read them in evidence, but that they were "to go in evidence." This is tantamount to saying they should be considered in evidence; and if considered in evidence, then the presumption is, in the absence of the policy from the bill of exceptions, that its provisions warranted the judgment of the court, unless there is other evidence in the record which overcomes the presumption.

The death of appellee's intestate was admitted to have occurred on the 5th of March, 1873, of small-pox, having been sick some two weeks; that there was, at the time of his death, 3770 policies issued and outstanding at that time, and liable to assessment for losses; that no assessment had ever been made upon assured until the assessment of the 25th of January, 1873, notice of which was deposited in the postoffice at Chicago, February 3, 1873, and would, in due course of mail, reach the then residence of assured on the next day. A second assessment was made on deceased on the 10th of March, and was deposited in the postoffice at Chicago, on the 15th of that month, the company not then knowing of his death.

On the 26th of March, 1873, appellee sent to the company the amount of the two assessments, together with notice of the death of assured, but the company, claiming that the policy had lapsed, refused to receive the money, and appellee furnished the proofs of death, as required by the policy.

Appellant read in evidence a stipulation, in which it was further admitted that the notice sent to deceased was the same in form as those sent to all other policyholders; that no payment of these assessments was made prior to March 26, 1873, when it was offered, and refused on the ground that the policy had lapsed; that appellant did not know of the death of assured until that date.

A copy of the notice to assured was read in evidence under this stipulation, the last clause of which is this: " By the conditions of your policy, the above mentioned assessments must be received at this office within thirty days from date of this notice.   On the return of this notice with the money, by post-office order or draft, and the following blank filled out as directed, a receipt will be forwarded to you;" that this notice was mailed to the deceased on the 25th of January, 1873.

The bill of exceptions states that these stipulations were all the evidence read on the trial by either party.

Does this evidence sustain the finding of the court?   Before discussing this question, it becomes necessary to notice a discrepancy in the two stipulations signed by the parties.   In the first it is stipulated that the notice to the assured was dated on the 25th of January, 1873, and was placed in the postoffice on the 3d of the next February, directed to him at Leroy P. O., and would reach there, by due course of mail, on the 4th of that month.   The other stipulation says the notice was mailed to Palmer on the 25th of January, 1873.   Counsel on each side refer to the date most favorable to their view of the case, without any reference to the fact that there are contradictory dates.

Then, which are we to adopt as the true date?   Evidently the 3d of February.   It is stated fully and circumstantially, giving details as of that date, whilst the other is a mere naked state-

ment that it was mailed to him on the 25th of January, without saying where it was mailed or to what place directed. We presume that it was intended only to state that it was dated on that day, but, by mistake, it was stated to have been then mailed. But if it should be regarded as having been intentionally so written, then it is not sufficiently certain to operate as a notice.

In discussing the evidence, we shall treat the policy as being in evidence by the stipulation, and refer to the copy set out in the declaration for its terms and conditions, as appellant has not embodied it in the bill of exceptions; the condition there being, that the assured should, within thirty days from the date of notice, pay to the company the assessment, collection costs and annual dues, and a failure to do so should render the "policy null and void, and of no effect."

What was the date of notice in this case? Was it the 25th day of January, when it was made out and signed, or the 3d day of February, the day it was placed in the postoffice, or was it the day it arrived at the postoffice at the residence of the assured? The policy only says that the money must be received by the company in thirty days from the date of the notice. Appellant claims this means that it must be within thirty days from the day written on the paper as a date, whilst appellee claims that there can be no notice until the facts contained in the writing on the paper come to the knowledge of assured, and that is the date of notice. All know that notice means knowledge given of some act done or required to be done, or of some occurrence that has or will transpire. Hence, the object of a notice is, to give some information to the person to be notified. Then the object of this agreement was, that the assured should be informed that an assessment had been made that he was required to pay, by the terms of his agreement; and the insurance company undertook and agreed that they would convey to him information of the fact that he had been assessed, and the amount imposed, and he agreed that, after they should put him in possession of the fact, he would pay the amount within thirty days.

It would be unreasonable and unjust to hold, under this agreement, that the secretary might fill up a printed blank for a notice, sign and date it, and then lock it up in his desk and hold it for thirty days and more, and that this was the notice required. Instead of notice, it would be withholding notice. It would be the very reverse of what the company had bound themselves to do. In such a case, there would be a date to the paper, but it would be a perversion of terms, and actually contrary to the fact, to say that the person named in such a paper had notice from the time the paper was filled up and dated. Nor does the mere fact that the written notice is placed in the mail prove that there was notice at the time it was so deposited. All know that, when the person to whom it is addressed resides and is at another place, perhaps hundreds of miles distant, he does not receive, nor can he receive information of the contents of the notice, simply by its being placed in the postoffice. He is not there to see it, and if he were he could not possess himself of it to learn its contents. The postoffice is used as a convenient agency to carry the notice to the place of residence of the person to be notified. The placing of the notice in the postoffice is no more a service of the notice than placing it in the hands of a messenger to carry it to the person to be served. Had this notice been placed in the hands of such a messenger, we apprehend no one would contend that it would operate as a notice from the time it was placed in his hands, and the postal service was adopted in this case as the messenger, and with like effect as if the messenger had been an individual.

Then, when did the assured in this case have the notice or receive the information the company agreed to give him? As it is stipulated that the notice would reach the residence of the assured on the 4th of February by due course of mail, we may infer that, if it did not arrive after business hours, he received it on that day, and as the stipulation is silent as to the time of the arrival of the mail, we will infer that it was during business hours, and that he took it from the postoffice on that

day, and then for the first time received the notice, and that was the date of the notice.

Then, when did the thirty days in which to make payment expire? It was, by the terms of the agreement, to be within thirty days from the date of the notice. This, then, excludes the 4th, the date we infer the notice was given, from the count. There were remaining twenty-four days in February and five days in March, as the assured died on the 5th, making twenty-nine days from the day of service of notice until he died, leaving all of that and the next day to make payment. If a letter mailed in Chicago would reach Leroy on the next day, we may safely conclude that, had assured not died, he would still have had ample time to send the money within the time, either by mail or by messenger, to say nothing of telegraph in Chicago to make the payment for him.

But it is insisted that it was agreed in the policy that a written or printed notice directed to the address of assured, as it appeared on the books of the company, and deposited in the postoffice, or delivered by an agent of the company, or printed in a newspaper published by the company and forwarded as aforesaid, should be deemed legal notice, and therefore the notice took effect as such when deposited in the postoffice. We think that this was intended to provide for the mode of service, and not that these acts, except a delivery by an agent, should be accepted as notice; but that a reasonable time would still be required for the notice to reach the assured. But even if that construction should be adopted, still the assured had all of the thirtieth day in which to make payment, and he was not in default at the time he died.

Did his death, then, operate to render the policy invalid? We think not.

The company had no power to declare a forfeiture after the death of assured. He not having done any act in his lifetime authorizing the forfeiture, and having died before any forfeiture was properly declared, the liability to pay the amount of the policy became fixed by his death, and no act of the com-

pany thereafter performed, short of a payment or a tender, could relieve it from liability to a recovery.

Perceiving no error in this record requiring a reversal of the judgment of the court below, the same is affirmed.

*Judgment affirmed.*