SHELDEN *v.* NATIONAL MASONIC ACCIDENT ASSOCIATION.

1. MUTUAL BENEFIT ASSOCIATIONS — ASSESSMENTS — WHEN PAYABLE.

Where there is a question as to the time within which assessments levied by a mutual benefit association must be paid to prevent a forfeiture, its articles of association will govern, instead of by-laws adopted by the board of directors.

2. SAME—NOTIFICATION—SERVICE BY MAIL.

Where the articles of a mutual benefit association require its members to pay assessments within a given time after having been "notified," to prevent a forfeiture of benefits, and provide that mailing a notice shall constitute such "notification," time does not begin to run against a member until he receives the notice, or ought to have received it in the ordinary course of the mails.

3. SAME—PROOFS OF LOSS—DELAY—ESTOPPEL.

A mutual benefit association cannot take advantage of a delay in furnishing proofs of loss, occasioned by a neglect of duty on the part of its secretary in supplying blanks for such proofs after a request for the same by the beneficiary.

Error to Houghton; Haire, J., presiding. Submitted October 27, 1899. Decided December 21, 1899.

*Assumpsit* by Mary E. Shelden against the National Masonic Accident Association on a policy of insurance. From a judgment for plaintiff, defendant brings error. Affirmed.

*Dunstan & Hanchette* (*O. B. Ayres*, of counsel), for appellant.

*R. Skiff Shelden* (*Gray & Looney*, of counsel), for appellee.

LONG, J. This action is brought by the plaintiff, as beneficiary in an accident policy for $5,000 issued by

defendant to plaintiff's husband on June 21, 1895. Mr. Shelden paid the defendant, at the time the certificate was issued, a membership fee of five dollars, which was all the fees and dues required to make him a member. He also paid all dues and fees to the defendant up to October 1, 1896. On the evening of that day he was shot on the streets of Houghton, this State, from which accident he died on the morning of the following day. It appears that on August 10, 1896, an assessment of three dollars was authorized by the company for the benefit fund in the division of which Shelden was a member. It was provided in the resolution for the assessment that notices of such assessment should be mailed to the members on or before August 31, 1896. The defendant company is located in Iowa, and its principal office is at Des Moines. Notice of the assessment was mailed to Shelden, at Houghton, Mich., from Des Moines, on or before August 29th, and it is claimed that it reached Houghton about September 1st. The notice reads as follows:

"Office of the National Masonic Accident Association.

"Des Moines, Iowa, September 1, 1896.

"A quarterly assessment of $3 for the quarter beginning October 1, 1896, and ending January 1, 1897, payable before October 1, 1896, has been levied upon all members of division A of the association,  *  *  *  to be applied as follows: Benefit fund, $2; expense fund, $1; total, $3. *  *  *

"Payments should be made promptly. Lapsed certificates cannot be reinstated until payment is received by the secretary. Fill blanks, and return this notice with remittance to the undersigned, or pay to ———, Collector.

"Fraternally,

"J. A. Doverman, Secretary."

Mr. William D. Calverly, a witness for plaintiff, testified that on October 1, 1896, he paid this premium demanded by the above notice to Harry Rice, cashier of the National Bank of Houghton; that he was the bookkeeper for Mr. Shelden, and had been since 1880, and had more

or less to do with the payments for Mr. Shelden of his insurance premiums, and had two, three, or four times paid premiums on this certificate to Mr. Rice for Mr. Shelden. Mr. Rice testified that he was the collector at Houghton for the defendant company, and had never been notified that his agency had ceased. The receipt given to Mr. Calverly for the three dollars paid on October 1, 1896, bears date October 1st, and Mr. Rice's name is signed to it, though Mr. Rice testified that it was not his signature. John Rees, who is the assistant cashier of the bank, and under Mr. Rice, testified that he signed Mr. Rice's name to the receipt, and received the money. It appears that this money was remitted by the bank, or Mr. Rice, to the defendant company, and that it has never been returned.

On the trial it was contended by counsel for defendant, and it is now contended here, that the payment made on October 1, 1896, was not in time, but that, under section 19 of the by-laws, and the resolution ordering the assessment, and under the notice of assessment, Mr. Shelden was bound to pay no later than midnight of September 30, 1896; that the payment on October 1st was too late, and the policy lapsed, and, the accident happening after that time, no recovery could be had. The notice has been set out herein. The resolution for the assessment reads:

"On motion of O. B. Ayres, an assessment was ordered made on all members of the association; the amount of said assessment to be $2 for the benefit fund in division A, * * * and $1 quarterly dues for the expense fund of division A. * * * Notice of said assessment to be mailed to said members on or before August 31, 1896, and to become due and payable during the month of September. * * *"

Section 19 of the by-laws reads:

"If any member shall fail to pay an assessment on or before the day so fixed for payment thereof, his certificate and membership shall cease to be of any force or effect, and can only be revived by payment as hereinafter provided. It is the privilege of any member to pay any

assessment in any year, and to thereby be entitled to benefits from the time when such assessment is paid until the next assessment becomes due; but no benefits of any kind can accrue or be paid for or on account of any injury received by the member between the time when any assessment became due and the time when the same or some subsequent assessment is received by the secretary at his office; and no requiring of any subsequent assessment of such delinquent member, or notifying him of any assessment, nor any receipt of any assessment after the same has become due, shall in any way alter, change, or affect this rule."

It appears that it was after this assessment became due and payable, and before the assessment was actually received by the secretary at his office in Des Moines, Iowa, that Mr. Shelden received injuries which proved fatal; that is, the assessment was not received by the secretary at Des Moines until October 5, 1896, and Mr. Shelden was injured on the evening of October 1st. As has been stated, however, the assessment was paid to Mr. Rice at the bank some time during the day of October 1st, and before the injury. The court below charged the jury upon this question as follows:

"I instruct you that if you find from the evidence, however, that Mr. Shelden had been in the habit of paying his dues and assessments to Mr. Rice, or any other person connected with the bank at Houghton, and that the association knew this, and received such dues from and through Mr. Rice or such other person connected with the bank, and made no objection to Mr. Shelden of such payment, and that Mr. Shelden had not been notified by the association not to make any further payments to Mr. Rice or any other person, or that such payments should be made to the secretary at his office, then the payment of October 1, 1896, although made after the regular time, would have the effect of restoring Mr. Shelden to all the benefits attaching to his membership in the association, the same as if such payment had been made in time. I further instruct you that simply leaving out the name of the collector in the notice of assessment which the undisputed evidence shows was made by the secretary of the association, and mailing to Mr. Shelden, would not be

sufficient or proper notice to Mr. Shelden to deprive him of the right to make such payment to Mr. Rice, or such other person or corporation.  On the other hand, I charge you that if you find from the evidence that said George C. Shelden, at or before the payment was made on October 1, 1896, knew or had notice that a payment made on that day would not take effect until actually received by the secretary of the defendant at Des Moines, Iowa, then you should find that the payment was not made in time, and in that event you will find for the defendant.  In other words, if Mr. Shelden had notice that this was not the proper place to pay the assessment, then, in that event, if you find such to be the fact, you will find in favor of the defendant.  That is all I have to say upon the question of payment.  If you find on the question of the payment of dues in favor of the defendant, you need go no further in the case; simply return a verdict for the defendant.  If you find in favor of the plaintiff on that point, you will then consider the next question."

The defendant contends that the court was in error in this part of the charge, and that, under the facts shown, the court should have directed the verdict in favor of defendant.  On the other hand, it is contended by counsel for plaintiff that this by-law has no such force as claimed; that the articles of association must govern; and attention is called to section 8 of article 8, which reads:

"Any member failing to pay his assessment or dues within thirty days after having been notified shall forfeit all his right to benefits.  Mailing a notice to his post-office address as shown by the books of the association shall constitute such notification."

Counsel for plaintiff contend that it is not necessary to inquire whether the by-laws affect this provision, for these articles can be changed by the members only, while the by-laws are made and may be amended by the board of directors; that the above section of the articles of association contemplates that the member shall have 30 days after being notified in which to make his payment of assessment for benefits; and that the words of this section, "after having been notified," mean that he shall have 30 days after

he has received the notice, or 30 days after a notice mailed to him would reach him in the ordinary course of mails, and not that he shall have only 30 days after the day of mailing the notice.

We think the contention of the defendant cannot be sustained; that section 8 of article 8 of the articles of association must govern the question. Where notice of a stated number of days is required (that is, that a member shall be informed) before the forfeiture of a right to membership can take place, it cannot be said that the time can be counted from the time when the notice is dated, or when the notice is placed in the post-office, addressed to the member. In *Castner* v. *Insurance Co.*, 50 Mich. 273, the language of the charter was that the member was to be "notified, by the secretary or other-wise, either by circular or a verbal notice." It was contended by the insurance company that mailing a notice of assessment, prepaid, and directed to a member, was a sufficient compliance with the charter of the company. The court said:

"The consequences to flow from this notification are admitted to be important. A fixed personal liability is to depend upon it; and, further, in case of failure to respond by payment of the sum assessed, as communicated by the 'notice,' during a given number of days, the member is to stand unprotected by his policy, and wholly without remedy or redress in case of loss. In principle it is not easy to distinguish the nature of the required notification from the office and object of service of process, and there would seem to be as much reason for real notice in the case in question as in the case of an action. The destruction of a mail, or accidents preventing the delivery of matter, or even a considerable delay, might at any time, without fault of the persons insured, eventuate in widespread loss and injustice. No construction open to so much objection should be admitted unless rendered necessary by the terms of the charter; and they do not require it. On the contrary, they contemplate that the members shall have real information of the assessment. The provision is not that notice or information shall be mailed, or sent, or forwarded. The members are to be 'notified,'—

that is, informed; to have made known to them the fact of the assessment; and this is permitted to be done either by oral statements to the members, or by delivery to them of written statements through the agency of the post-office, or some other. It follows that the second ground of defense cannot be supported."

See, also, *Protection Life Ins. Co.* v. *Palmer*, 81 Ill. 88.

It is true that, where service is the principal thing, and it is provided in the charter or by-laws that service may be made by mail, then so depositing the paper addressed to the member will be sufficient. In *Ross* v. *Insurance Co.*, 83 Iowa, 586, it appeared that the statute of Iowa provided for notice to an assured by the company of the maturity of his premium note, and declared that "such notice may be served either personally or by registered letter addressed to the assured at his post-office address named in or on the policy; and no policy of insurance shall be suspended for nonpayment of such amount until thirty days after such notice has been served." It was held that service was complete, and the 30 days began to run, as soon as the letter was mailed as provided by law. The court said, "It is the *service*, and not *notice*, that gives rise to the operation of the statute." In the present case, however, there must be *notice* before a forfeiture can take place. There is great and apparent necessity for notice of the levying of an assessment. Assessments are levied only when needed, and the officers of the company are the ones who are to determine this necessity. A member cannot be put in default for not paying his assessment until he is notified as provided by the charter. We think the payment of the assessment on October 1st was in time after notice was received. We need not discuss the question whether the court below was right or not in its conclusions upon this subject, as the jury have found for the plaintiff.

It is also contended by the defendant that, the proofs of death not having been forwarded to the company within

30 days after the death of Mr. Shelden, the plaintiff could not recover. The court charged the jury upon that subject as follows:

"The defendant claims that, under its by-laws, proof of the death of Mr. Shelden must have been received by it within 30 days after such death, and that the proofs in this case were not so received; and, gentlemen, it is a fact that they were not received within 30 days after the death of Mr. Shelden. That, as I said before, is undisputed. That is one of the laws of the association as laid down by the by-laws, and must govern, unless it is waived by some other provision. The general rule is that such a stipulation in the by-laws or in the insurance contract must prevail; but this rule is subject to several exceptions, one of which is that, if the delay in serving such proof is in any way attributable to the insurer, the penalty or forfeit provided for default in this respect shall not be imposed. There is testimony in the case in regard to the duty of the secretary, under the by-laws, to furnish blanks for proofs of death after receiving notice of the injury or death of the member, and testimony as to a demand of plaintiff for such blanks, and the time when they were furnished, and the kind furnished, in response to such demand; and I charge you that if you find from the evidence that the alleged delay in furnishing proofs of death within the time required by the by-laws was to any extent, or in any way attributable to the defendant association, then the defendant association waived strict compliance with the by-laws in that regard, and the penalty therein fixed for delay in furnishing proofs could not now be imposed; in other words, that the proofs were, as a matter of law, served and furnished in due time, provided that you also find, gentlemen, in connection with that, that plaintiff herself, or her representative, used no more time than was necessary to procure the proofs after they had received the blanks in question. If you find, however, that they used more time than necessary; that they, by using reasonable diligence, could have procured proofs after receiving the blanks from the secretary,—then you will find in favor of the defendant, because they did not reach there in time, and it was owing to their own negligence, if you do find that to be the fact."

The proofs of death were not served on the company until November 2, 1896. This was one day over the 30

days provided by the by-laws, and we think the court very properly left the question to the jury to determine where the fault rested.

We have examined this record with some care, and find no error.    The other assignments of error need not be discussed.

The judgment must be affirmed

The other Justices concurred.