MINER *v.* FARMERS' MUTUAL FIRE INSURANCE CO. OF MANISTEE, BENZIE AND MASON COUNTIES.

1. FIRE INSURANCE— MUTUAL INSURANCE COMPANIES — NOTICE OF ASSESSMENTS— "ISSUING."

A provision in the charter of a mutual fire insurance company requiring the payment of assessments within 30 days after the "issuing" of the notice of assessment, means within 30 days after the giving or delivery of such notice. MONTGOMERY, HOOKER, and CARPENTER, JJ., dissenting.

2. SAME—SUFFICIENCY OF NOTICE.

Where the charter of a mutual fire insurance company provides the notice of assessment that shall be given to members, a member can only be put in default by the notice provided for, and his knowledge otherwise acquired is not sufficient.

3. SAME—MAILING NOTICE—QUESTION FOR JURY.

In an action on a policy issued by a mutual fire insurance company on which plaintiff had failed to pay an assessment, testimony tending to show that the notice of assessment required by defendant's charter had not been received was some evidence that the notice was not mailed, and raised an issue of fact which should have been submitted to the jury.

Error to Benzie; Chittenden, J. Submitted April 16, 1908. (Docket No. 112.) Decided July 13, 1908.

Assumpsit by James J. Miner against the Farmers' Mutual Fire Insurance Company of Manistee, Benzie and Mason Counties on a policy of insurance. There was judgment for defendant on a verdict directed by the court, and plaintiff brings error. Reversed.

*D. G. F. Warner,* for appellant.

*Pratt & Davis,* for appellee.

BLAIR, J. This is an action on a policy issued by defendant to plaintiff, a member of the company, covering property which was destroyed by fire on the 8th day of

November, 1905. Defendant pleaded the general issue with notice—

"That at the time of the loss mentioned in plaintiff's declaration, said policy of insurance was without force, in that said plaintiff was in default in the payment of his dues and assessments, and had neglected to pay such dues and assessments within thirty days after the notice of the same had been issued as he was required to do by the constitution of defendant association."

Sections 18, 19, 20 of the defendant's charter, which were printed on the policy, were as follows:

"SECTION 18. Whenever the board of directors shall order an assessment in accordance with section 17 of this charter, the secretary shall execute the same, which shall be signed by a majority of the board of directors and secretary and placed on file in said secretary's office and such assessment so signed shall be evidence in courts and all other places that the sums assessed are due and payable to the company from the person against whom the same are respectively made. Every member shall be equitably and ratably assessed in proportion to the amount of his or her insurance as stated and fixed in the severable agreements and schedules of insurance.

"SEC. 19. When such assessment shall have been completed according to section 18 of the charter, the secretary shall prepare a written or printed circular, a copy of which he shall direct to each member of the company to his or her last known post-office address, setting forth to such members the amount of such member's assessment, and each member shall pay his or her assessment to the president or his receiver within thirty days after the issuing of said notice, and in default thereof his or her insurance shall be suspended and shall henceforth have no claim against said company for losses sustained until his or her assessment is paid. The assessment roll shall be evidence in all courts of law that the sum assessed is due the company and payable by the person assessed.

"SEC. 20. If any member of the company shall neglect or refuse for the space of thirty days after the date of such circular as provided for in section 19 to pay the assessment therein made, the secretary may proceed forthwith to collect the same by due process of law, adding 25 per centum to the amount of said assessment of each said

delinquents, and such delinquents shall be liable for all demands due from him or her to said company, and no insurance policy shall be binding until the actual payment of the premiums."

An assessment was made on the members in August, 1905. An employé of the secretary testified that it was her duty to send out notices of the assessments, and for that purpose she had the assessment book containing, among other names, that of plaintiff:

"I made out all of the assessments and Mrs. Griffin folded them and put them in the envelopes and Mr. Griffin and I carried them to the post office all at once; these were the notices of assessment. The list covered the entire list in this book. The notices were partly written and partly printed. I took the number of the policy from the big book, put it on the notice, also on the envelope. The number 1947 was the number of Mr. Miner's policy. I placed it on the envelope, also on the notice of assessment. The envelopes had a return notice upon them, if not called for in, return to John Griffin, Scottville, Michigan, that was on the upper left-hand corner. I wrote the name of the party on the assessment and on the envelope. I did it in relation to all these parties whose names appear upon the assessment. * * * The assessment was completed and the notices mailed the first week of September, 1905."

In response to a question by the court, witness said:

"I remember Mr. Miner's name on the book is all, but I don't remember sending a notice to him in particular."

Plaintiff testified:

"Up to the time of the fire I had paid all the assessments brought to my notice. I paid one assessment after the fire on November 9. I didn't know it was due until I went over to see Mr. Fitts. I think I heard about it the day before the house burned, I was helping my brother and he told me that there had been an assessment made. That is the only way I knew, the day before the fire. The day after the fire I went to Mr. Fitts and he told me the amount of the assessment and that is the first I knew what the assessment was. I then paid the assessment. I had not received any notice of any assessment that I had

not paid. * * * I am positive that I got no written notice of the assessment prior to my fire."

Steve Miner, a brother of plaintiff, testified to a conversation with plaintiff:

" My time book shows that it is the day we finished digging potatoes, which was the 7th day of November. We were working together and I asked him if he had paid his assessment to the Farmers' Mutual Fire Insurance Co., and he told me that he hadn't paid it. He says it is just a little past due, isn't it? It is due the 1st of November. I told him no, it is due the 1st of October. He told me he hadn't received any notice."

At the conclusion of the testimony, the court directed a verdict for defendant, stating his reasons therefor as follows:

" Gentlemen of the jury, in this case, under the ruling of the court in regard to this notice, the court held that this notice must come home to Mr. Miner. On reviewing the testimony more carefully, I find that one of the plaintiff's witnesses testified that Mr. Miner, in conversation with him, on the 7th day of November, told him that he understood that the payment was — but I will read from the testimony of Stephen Miner: 'He said it is just a little past due, isn't it? It is due the 1st of November.' That would be conclusive proof, as long as the testimony is not disputed, that this plaintiff new that this assessment was past due and therefore he was in default. And while he may not have received the notice from the company as testified to by him and as we have every reason to believe he did not from his testimony, nevertheless he had other notice and the court holds that he did and that he was in default and your verdict, gentlemen, will be no cause of action."

Plaintiff brings the record to this court for review, alleging, among other assignments of error, that:

" The court erred in refusing and not submitting the case to the jury on its merits under a proper instruction from the court." ÷

In support of this assignment of error, counsel for plaintiff contends that the only notice of assessment sufficient

to work a suspension or forfeiture of his policy is the written notice provided for in the charter, and that such notice must be not only made out, but mailed to, and received by, the plaintiff to be effective.

Although the evidence indicates that the assessments during the six years plaintiff had been a member had been uniformly made prior to, and notice thereof mailed during, the first week in September, section 17 of the charter provided for making them "from time to time as may be necessary," and the provisions as to notice are to be construed with this in mind.

The purpose of the notice is to inform the member that the assessing officers, who may act at any time, have acted at a certain time, and that his obligation to pay the particular assessment has arisen. The verb, "to issue," includes among its meanings, "to deliver by authority." 17 Am. & Eng. Enc. Law (2d Ed.), p. 539; 23 Cyc. p. 358; *Thomas* v. *Abbott*, 105 Mich. 687.

Construing section 18 with reference to its manifest purpose of notifying the member of the happening of an indefinite event, I think the provision "within 30 days after the issuing of said notice" should be read as meaning within 30 days after the giving or delivery of said notice.

While the provisions of section 19 imply that the notice is to be mailed to the members, it is worthy of note that in fixing the beginning of the period for payment the provision is not that the member shall pay within 30 days after the mailing of said notice, which would have been the obviously natural expression, if such was the intention.

Plaintiff could only be put in default by the notice provided for in the charter, and his knowledge otherwise acquired was not sufficient for that purpose. *Castner* v. *Insurance Co.*, 50 Mich. 273; *Miner* v. *Benefit Ass'n*, 63 Mich. 338; *Warner* v. *Life Ass'n*, 100 Mich. 157; *Shelden* v. *Accident Ass'n*, 122 Mich. 403.

I am also of the opinion that the testimony that the

notice was not received was some evidence that the notice was not mailed, and raised an issue of fact which should have been submitted to the jury.

Judgment reversed, and new trial granted.

GRANT, C. J., and OSTRANDER, MOORE, and McAL-VAY, JJ., concurred with BLAIR, J.

MONTGOMERY, J.  The facts are sufficiently stated in the opinion of Mr. Justice BLAIR, and the provisions of the company's charter relating to assessments are there set out.  It seems to be conceded that there was evidence that the notice provided for by section 19 of the charter was in fact prepared and mailed to the post-office address of the plaintiff.  But it also appeared that there was evidence tending to show that the plaintiff never in fact received the notice mailed, and the question is whether, in such a case, the suspension of plaintiff's policy became effective after the lapse of the regular time from the service made of the notice, or whether it is required that, before there can be any suspension of the policy, the notice must actually have been received by the insured. To sustain the view that such notice must actually be received, four cases are cited: *Castner* v. *Insurance Co.*, 50 Mich. 273; *Miner* v. *Benefit Ass'n*, 63 Mich. 338; *Warner* v. *Life Ass'n*, 100 Mich. 157; *Shelden* v. *Accident Ass'n*, 122 Mich. 403.  All these cases are clearly distinguishable from the present.

In *Castner's Case*, the charter provided that the member was to be *notified* by the secretary or otherwise, either by circular or verbal notice.  It was held that, in view of the consequences to flow from this notification, it should be strictly construed, and that actual receipt of the notice was what was intended.  It was said by the court:

"The provision is not that notice or information shall be mailed or sent or forwarded.  The members are to be 'notified,' that is, informed; to have made known to them the fact of the assessment."

In the present case, however, the method of service of notice is distinctly pointed out, to wit, a written or printed circular directed to each member of the company to his or her last known post-office address, and the provision is that each member shall pay his or her assessment to the president or his receiver within 30 days after the issuing of said notice.

*Miner* v. *Benefit Ass'n* turned upon sufficiency of the notice in *form*. The *Warner Case* was similar in all respects to the *Miner Case*.

In *Shelden's Case,* it was held that, under an article of the association which reads:

"Any member failing to pay his assessment or dues within thirty days after having been *notified* shall forfeit all his right to benefits. Mailing a notice to his post-office address as shown by the books of the association shall constitute such notification."

the payment was made within time. The facts were that the notice was mailed from Des Moines, Iowa, on the 29th of August and reached the place of residence of assured on the 1st day of September. The 30 days would not have expired until midnight of October 1st if the date at which the notice would in due course reach the assured was taken as the date of notification, and, if this were the proper date, the payment was made within time. The contention of the plaintiff was that the 30 days allowed for payment meant 30 days after he had actually received the notice, or 30 days after notice mailed to him would reach him in the ordinary course of the mails, and not that he should have only 30 days after the mailing of the notice. It was held that the payment on October 1st was in time after the notice was received. It was recognized as the correct rule that where service is the principal thing, and it is provided in the charter or by-laws that service may be by mail, then, that so depositing the paper addressed to a member will be sufficient notice.

The case of *Ross* v. *Insurance Co.*, 83 Iowa, 586, was cited with approval. In that case, a provision of the char-

ter that "such notice may be served either personally or by registered letter addressed to the assured at his post-office address named in or on the policy," was construed, and it was held that the service was complete, and that the 30 days for payment began to run as soon as the letter was mailed as provided by law. The provision for forfeiture in the case was that "no policy of insurance shall be suspended for nonpayment of such amount until thirty days after such notice has been served."

It is not easy to distinguish that case from the present, which provides precisely what the secretary shall do in making service, and then provides that if payment is not made within 30 days from the issuing of said notice, the insurance shall be suspended. There is no other provision contained in the charter for issuing a notice except that of mailing the same, and the only notification which the charter provides for is the notification by this means.

It would seem that the case is distinguishable from any of those relied upon in the opinion of Mr. Justice BLAIR, that the service was complete upon the mailing. I agree that the plaintiff's testimony to the effect that the notice was never received was sufficient, under the circumstances of this case, to present a question of fact for the jury.

HOOKER and CARPENTER, JJ., concurred with MONTGOMERY, J.