LANIER v. LITTLE ROCK COOPERAGE COMPANY.

Opinion delivered January 4, 1909.

1. SALES OF CHATTELS—INSPECTION—CONCLUSIVENESS.—Where a contract for the sale of staves provided that the vendee should make inspection of the staves, the vendor is bound by such inspection, in the absence of fraud or such gross mistake as would necessarily imply bad faith. (Page 559.)

2. SAME—BREACH OF CONTRACT—ESTOPPEL.—Where a contract for the sale of staves stipulated that inspection should be made by the buyer's agent, but, on account of such agent not being able to make inspection as fast as desired, the seller furnished an inspector, the seller is estopped to claim that such inspection was a violation of the contract. (Page 560.)

3. AGENCY—DELEGATION OF AUTHORITY.—An agent has no power to delegate his authority to another. (Page 560.)

4. APPEAL AND ERROR—INVITED ERROR.—Appellant cannot complain of an instruction given at appellee's instance if he asked one to the same effect. (Page 560.)

5. SALES OF CHATTELS—INSPECTION—FRAUD.—The fact that staves culled by the buyer were afterwards sold by the seller did not of itself tend to prove that the culling was improperly or fraudulently done, in the absence of proof that the staves so culled and sold were of the dimensions and character specified in the contract, as staves which did not come up to the contract might nevertheless have some market value. (Page 561.)

6. SAME—WAIVER OF BREACH OF CONTRACT.—Where staves were sold to be inspected by the vendee, and the vendee's inspector improperly culled staves tendered under the contract, yet if the vendor knew of such

improper culling and failed to notify the vendee that it expected to insist upon such improper culling as a breach of the contract, and if, after such alleged breaches, the vendor continued to ship staves to the vendee under the contract, and thereby the vendee was induced to perform its part of the contract and rely upon performance by the vendor, this constituted a waiver on the vendor's part of any improper culling by the vendee's inspector.   (Page 561.)

7.   SAME—BREACH—MEASURE OF VENDEE'S DAMAGES.—The measure of the vendee's damages for the vendor's failure to perform his contract is the difference between the actual cash market value of the undelivered goods at the time of the vendor's refusal to fulfill its contract, and the amount which the vendee agreed to pay therefor, together with six per cent. damages thereon from the date of such breach to the date of judgment.   (Page 561.)

Appeal from Howard Circuit Court; *James S. Steel,* Judge; affirmed.

*W. C. Rodgers* and *Sain & Sain,* for appellant.

There is no evidence that the staves were not according to contract.   The court erred in assuming that they did not come up to the contract.   14 Ark. 530; 36 *Id.* 641; 37 *Id.* 580; 54 *Id.* 336; 56 *Id.* 457; 61 *Id.* 549; 70 *Id.* 441; 74 *Id.* 19; *Id.* 468; 75 *Id.* 232; 76 *Id.* 348; 77 *Id.* 109.   Where one of two innocent parties must suffer by reason of an injury, it should be he who is first at fault. 95 Ga. 69.   The court has no right to assume that a disputed fact is established one way or the other.   37 Ark. 580.   Conflicting instructions necessarily call for a reversal.   74 Ark. 437. Where one party to a contract refuses to perform, the other party is justified in treating the contract as rescinded.   38 Ark. 174; 64 *Id.* 228; 65 *Id.* 320; 46 Ia. 235.   The principle of estoppel can not be invoked except where one has induced another to act. 36 Ark. 96; 39 *Id.* 131; 53 *Id.* 196; 63 *Id.* 289; 38 *Id.* 174.   It is the province of the jury to judge of the strength or weakness of the facts to support an issue.   37 Ark. 580.

*W. P. Feazel* and *Scott & Head,* for appellee.

In the absence of fraud or mistake, the estimates of the engineer are conclusive.   48 Ark. 522; 68 *Id.* 185; 79 *Id.* 506; 115 Ala. 138.

WOOD, J.   The appellee sued appellant, alleging that appellant, for a consideration of $21 per thousand, agreed to manufacture and deliver to appellee six hundred thousand staves, mill

run, dead culls out, of the following dimensions, 34 inches long, and, when dry, to plane three-fourth inches thick; that appellant had failed to deliver 365,000 staves, and that by this breach of the contract appellee was damaged in the sum of $2,500.

Appellant answered, denying any breach of the contract on its part, and averred that it had been ever ready to perform the contract, but that appellee, in culling the staves, refused and failed to correctly and fairly cull the same and rejected, as dead culls, a large number of staves which were above the grade of dead culls and refused to accept staves which conformed to the grade and character called for by the contract. It alleged that such refusal to accept staves within the class called for by the contract was the cause of the abandonment of the contract on the part of appellant. The case has been to this court before. *Little Rock Cooperage Co.* v. *Lanier,* 83 Ark. 548. At the beginning of the last trial appellant abandoned the defense of a failure of appellee to make payments, which had also been relied upon in the former trial, and rested its defense solely upon the other ground set up in the answer *supra.* It will be observed therefore that the crux of the controversy was whether or not there had been a breach of the contract on the part of appellee in culling and refusing to accept staves under the contract that justified appellant in its admitted abandonment thereof.

The contract provided for "the inspection to be made at the point of loading by the party of the second part." This provision made the appellee the agent of appellant in the matter of inspection, and, in the absence of fraud or such gross mistake as would necessarily imply bad faith, the appellant was bound by the inspection that appellee made. As to whether or not there was bad faith upon the part of appellee, through its agent appointed for the purpose of making the inspection, the court permitted the evidence to take a wide range. The evidence was voluminous, and it could serve no useful purpose to review it here. Suffice it to say, it was a jury question, which the court correctly submitted under several instructions according to the above doctrine announced by us in many cases. *Boston Store* v. *Schleuter, ante* p. 213; *Carlile* v. *Corrigan,* 83 Ark. 136; *Ark-Mo Zinc Co.* v. *Patterson,* 79 Ark. 506; *Ozan Lumber Co.* v. *Haynes,* 68 Ark. 285; *Hot Springs Railway Co.* v. *Maher,* 48 Ark. 522.

There was·evidence to the effect that appellee's inspecting agent could not do the work as fast as appellant desired, and appellant sent its own agents to assist in making some inspections. They did assist the agent of appellee, and he approved of the inspections that they made. There was evidence to the effect that these agents were to work under the supervision of the agent of appellee in making the inspection, and if a dispute arose it was to be referred to him. In view of this evidence, it was not error for the court to tell the jury, as it did in the seventh prayer by appellee, that if the inspector employed by appellant jointly inspected any staves with appellee's inspector, and the two agreed upon the culling, then the appellant was estopped from claiming any breach of contract by reason of the inspections that were thus jointly made. Certainly, appellant could not complain of an inspection which its special agents were instructed to make, even though appellee's agent supervised and approved such inspection. For, if such an inspection were contrary to the contract, appellant, and not appellee, caused it, and to allow appellant to claim such inspection as a breach would be to give it an advantage from its own wrong. The agent designated by appellee to make the inspection had no power which he could delegate to another, and appellee would not be bound by any conduct of the agent in this respect beyond the scope of his employment of which it had no notice. There is no proof that appellee had such notice, and therefore nothing to show its consent to a joint inspection. Moreover, if the giving of the seventh prayer of appellee was error, appellant waived it by asking the court to instruct the jury "that the joint inspection shown in evidence, where and to the extent it was approved by John Caperton, is as conclusive upon the plaintiffs (appellee) and the defendants (appellant), as though done by Caperton alone." Thus appellant itself asked that such joint inspection be declared conclusive upon it as well as appellee, and the court granted the request.

The court correctly construed the contract to call for staves that were thirty-four inches long and that would plane not less than three-fourth of an inch thick, and that appellee was not required to accept any staves that did not conform to these dimensions. There was no error therefore in telling the jury, as the court did in prayer eight of appellee, that the proof that staves

culled by appellee were afterwards sold by appellant to other parties would not of itself tend to show fraud and a·violation of the contract in culling the staves. But, before such proof could be considered as tending to establish fraud, it would have to further appear by a preponderance of the evidence that the staves culled and sold were of the dimensions and character specified in the contract.

Under the contract "dead culls," *i. e.*, culls that had no market value whatever, were expressly excluded. Staves that had some market value, but which were not according to the contract specifications, would be also excluded under the rule of *expressio unius est exclusio alterius.* Prayers nine and ten of appellee (Reporter set out in note) were correct instructions under the evidence on the subjects of waiver and estoppel.* They were in accord with the language of the opinion on these subjects heretofore rendered in ·this cause, on precisely similar facts. Furthermore, the contention of appellant that the requirements of the law would have been met had the notice been given to the culler designated by appellee is unsound. The culler was the agent of both parties to inspect for both. His authority was limited and special. He had no power to receive notice of his own delinquencies that would bind appellee. But, if any notice of defective culling was given, the undisputed evidence is that it was given to appellee's manager, Gaggs, who had authority to act. Therefore, even if appellant is correct in its contention, the instruction was harmless error.

Instruction number eleven at the request of appellee· correctly declared the law under the evidence as to the measure of damages.

---

*Instructions 9, 10 and 11, given at appellee's request, were as follows:

"9. If the jury find from a preponderance of the evidence that plaintiff's inspector fraudulently or grossly improperly culled staves tendered under the contract, and if you should further find from the evidence that defendants knew of such fraudulent or improper culling, and that, notwithstanding such knowledge, they failed to notify the plaintiff or some agent having authority to act that they expected to insist upon such improper culling as a breach of the contract, and that, after said alleged breaches occurred, defendants continued to ship staves to the plaintiff and induced plaintiff to believe that they would continue to ship staves under the contract, and thereby the plaintiff was induced to perform its part of the contract and to rely on performance by defendants, then you are instructed that this would be a waiver on the part of the defendants of

The court did not err in its rulings upon the prayers for instructions by appellant. Those that were correct the court gave, or else had covered same fully in instructions already given.

We are of the opinion, upon the whole record, that the cause has been fairly tried, and that the judgment is correct.

Therefore affirm.

---

any improper culling that you may find, if any, on the part of plaintiff's inspector, and your verdict should be for the plaintiff.

"10. The court instructs the jury that the defendants owed the plaintiff the duty of being candid with it, and if in fact the plaintiff's inspector at any time improperly culled the staves tendered by the defendants, and the defendants intended to insist upon such improper culling as a breach of contract, and to take advantage of such breach, it was the duty of the defendants to have notified some officer of plaintiff company who had power to act upon such complaint, and if they failed to make such notification they cannot do so now.

"11. The court instructs the jury that if you find for the plaintiff the measure of its damages will be the difference between the actual cash market value of such staves as were still undelivered under the contract, at cars at Nashville, Arkansas, at the time of the refusal of the defendants to fulfill their contract, if proved, and the amount which plaintiff was to pay for such staves at the price agreed upon by the parties as shown by such contract, if any such difference has been shown by a preponderance of the evidence, together with six per cent. interest thereon from the date of such breach to this date." (Rep.)