ANDREWS ET AL. *v.* MINTER COAL AND COKE COMPANY.

[No. 13,417.   Filed November 20, 1929.]

*Charles E. Henderson* and *Laurens L. Henderson,* for appellants.

*William W. Hammond, C. Severin Buschmann* and *George Young,* for appellee.

LOCKYEAR, J.—The appellee herein filed a complaint in the Marion Superior Court against the appellants,

John T. Andrews and the London and Lancashire Indemnity Company of America, in which it is alleged: That the appellee is engaged in the retail coal business in the city of Indianapolis; that, on or about September 25, 1926, this appellee employed appellant John T. Andrews as cashier, bookkeeper and office manager of the appellee's office in said business; that said appellant had charge of the office, the making of all collections of money, and the keeping of the books, entries and papers of every kind and character concerning said business; that one of the conditions of said Andrew's employment was that he furnish a bond in the sum of $5,000 guaranteeing the faithful performance of his duties as such cashier, bookkeeper and office manager, and, in consideration of said employment, said appellant and the appellant indemnity company, executed and delivered a bond to this appellee, a copy of which bond is attached to the complaint and made a part thereof; that, by the terms of said bond, said appellant promised and agreed to make good and reimburse the appellee to an amount not exceeding the sum of $5,000 for any and all pecuniary loss of money, securities or other personal property belonging to the employer or in his possession (and for which he is legally liable) sustained by said employer by reason of any fraudulent or dishonest act or acts amounting to *larceny* or *embezzlement* committed by the employee during the term of such bond in connection with the duties of said position; also that appellant Andrews continued in the employment of the Minter Coal and Coke Company until about June 27, 1927, during which time Andrews was acting as cashier, bookkeeper and office manager; that said Andrews stole and embezzled from this appellee the sum of $5,000; that this appellee has performed all the conditions precedent on its part to be performed, and demands judgment for $5,000.

To this complaint the appellants filed separate an-

swers in general denial. Appellant indemnity company filed a second paragraph of answer, alleging that the appellee became aware of acts of the employee, Andrews, which could have been made the basis of a claim under said bond, and failed to notify the appellant indemnity company, of said acts as provided in said bond, and says there is no liability on said bond for any act of Andrews after appellee became aware of said acts.

Appellant indemnity company also filed a third paragraph of answer, in which it is alleged that, in accordance with the provisions of the bond, it did, on March 18, 1927, give notice to appellee that said bond was cancelled, to become effective as of March 17, 1927, and says that there is no liability on said bond after March 17, 1927.

There was a trial by jury and a verdict rendered in favor of the appellee against both the appellants, upon which the court rendered a judgment of $2,029.27. The appellants filed separate motions for a new trial, in which it was alleged that the verdict of the jury was not sustained by sufficient evidence; was contrary to law; the damages assessed by the jury were excessive, and the verdict of the jury was erroneous, in that the assessment of the amount of recovery was too large. Motion for a new trial was overruled, to which ruling of the court, the appellants at the time excepted, and assigned as error the overruling of the separate motions for a new trial.

The bond provides that "the surety shall not be liable hereunder unless such loss shall be discovered while this bond is in force or within six months after the cancellation or termination thereof in accordance with its terms, provided, however, if the employee shall die or retire or be dismissed from the service of the employer while this bond is in force, the surety shall not be liable hereunder for any act or acts committed by the employee after the employer shall have become aware of any act

of the employee which could be made the basis of a claim hereunder. The employer, upon discovering within the time herein provided, any act of the employee which might or could be made the basis of a claim hereunder, shall immediately notify the surety thereof at the Administration Office of the surety in Hartford, Connecticut. Such notice shall be given in writing and sent by registered mail. The employer shall, within ninety days after discovering that a loss covered hereunder has been sustained, file with the surety an itemized and duly sworn statement of the claim therefor. The surety may at any time terminate the obligation which it has assumed under this bond by giving the employer written notice of its election so to do, stating when such termination shall be effective and the surety shall not be liable for any act or default thereafter committed."

There was ample evidence to sustain the verdict of the jury against the appellant John T. Andrews. It appears in evidence that he began to work for the appellee, September 14, 1926, and continued until June of 1927. Gertrude C. Minter testified that she was the secretary and treasurer of the appellee company herein, and worked in the office while the appellant Andrews was there; that she managed the office and was also a bookkeeper; that she checked from the cash book, cash on hand, cash deposits in bank and in cash box and in the cash register for the month of September after Andrews came, and, in auditing and checking, found a discrepancy in the cash shown by the books and the actual cash on hand of $41.61; she then told Andrews there was a discrepancy in the cash book, and Andrews said he would find it, that it was in bookkeeping, and he worked on it constantly; discrepancies occurred each month until July 1, of the following year; one month, the books showed that, instead of being short, the company owed Andrews, and Andrews said it was simply a mistake in

bookkeeping; at one time, Mrs. Minter told him that she was going to tell her husband, Otto Minter, president of the company, about it, and he said, "Don't tell him," that it was simply a mistake, and allayed her suspicions, and he said at one time to her, "You don't think I got it, do you?" and she said, "No, if I did I would not have you here"; the first time that she actually saw him take any money was in June, 1927.

It is claimed by the appellant that, upon these facts, as testified to by this witness, and the other circumstances set out in the evidence, about which there seems to be no dispute, it was the duty of the appellee herein to notify the appellant surety of this shortage within a reasonable time after the discovery of the discrepancies in the account, that the surety might take steps to protect itself in the premises.

It has been held that, under an employee's indemnity bond providing that the employer shall, on discovery of any fraudulent act on the part of the bonded ■■ employee, immediately give notice thereof to the indemnity company, the employer is not bound to report his suspicions to the company even though they are strong enough to justify, in his opinion, the discharge of the employee, but, after suspicion is aroused, reasonable diligence must be used in pursuing inquiries as to the facts. *Fidelity & Guaranty Co.* v. *Western Bank* (1906), 29 Ky. Law Rep. 639, 94 S. W. 3; *American Surety Co.* v. *Pauly* (1898), 170 U. S. 133, 18 Sup. Ct. 552, 42 L. Ed. 977; *Perpetual Building, etc., Assn.* v. *Fidelity & Guaranty Co.* (1902), 118 Iowa 729, 92 N. W. 686; *Fidelity & Deposit Co.* v. *Courtney* (1900), 103 Fed. 599; *Donahue* v. *Insurance Co.* (1883), 56 Vt. 374; *Remington* v. *Fidelity & Deposit Co.* (1902), 27 Wash. 429, 67 Pac. 989. Unless the lapse of time is so long as to be obviously a noncompliance with the contract, the question whether the notice was timely is one for the jury.

*Fidelity & Guaranty Co.* v. *Western Bank, supra.*

The object of the bond or policy of insurance, as was said by Justice Harlan in the case of the *American Surety Co.* v. *Pauly, supra,* at page 144, was to indemnify or insure against loss arising from any act of fraud on the part of the insured. To require of the employer to report every act that looks suspicious would be to make the employer an insurer of his own employees.

This policy is to cover acts that amount to larceny or embezzlement, and the employer is required to report to the surety company, not discrepancies in bookkeeping, but acts that would be the basis of a claim against the surety, to wit, larceny or embezzlement. To report anything short of that would be reporting something outside of the policy and of no concern to the surety.

*Aetna Insurance Co.* v. *Fowler* (1896), 108 Mich. 557, 66 N. W. 470, was a case where an insurance agent collected money and invested money in real estate, and the principal did not report. It was held surety was not liable, the court stating that failure alone to remit was not sufficient to require that the facts be reported to surety. The surety guarantees the fidelity of the agent, and it is not the duty of the employer to be actively vigilant over the agent, but good faith is required. Cases where it is the duty to report are illustrated in *Gemble-Robinson Co.* v. *Mass. Bonding, etc., Co.* (1910), 113 Minn. 38, 129 N. W. 131, which was a case where the shortage was clearly known and agreed upon between the employer and the employee, who had started paying back amounts due, and the employer failed to notify the company. The question was beyond mere suspicion. It was standing out as a positive fact, and there was no ground for hesitancy.

We are of the opinion that it was a question for the jury to decide, under proper instructions, as to whether

it was the duty of the treasurer of the appellee company to report the shortage of the insured, and whether the explanations and reasons given by the insured as to clerical errors and mistakes in bookkeeping were sufficient to cause a reasonably prudent person to delay in reporting to the surety that the appellant was guilty of acts sufficient to be the basis of a claim against the company, to wit, larceny or embezzlement.

The evidence in regard to the notice to the appellee that the indemnity company intended to cancel the bond was that a registered letter, deposited in the United States mail, was sent to the appellee with a request for a return receipt indorsed thereon. The letter was delivered at the office of the appellee, and the return receipt was signed "Minter Coal and Coke Company by John T. Andrews." Andrews testified that he placed the envelope unopened on the desk of the president of the company, Otto Minter, who testified he did not see the letter, nor did Andrews say anything about having received or receipted for a registered letter from the indemnity company, and did not know of the purported cancellation of the bond until June 28, 1927.

Whether the notice of cancellation of the bond by the surety was effective or not, it has been held in the case of *Orange County, etc., Fire Assn.* v. *Frost* (1920), 74 Ind. App. 193, 128 N. E. 768, (Nichols, J., quoting from *Schmidt* v. *German Mut. Ins. Co.* [1891], 4 Ind. App. 430, 30 N. E. 939, saying): "Where one is entitled to notice by the terms of a contract and has not stipulated that it may be given through the mails or some other mediumship, he is entitled to actual notice, and anything short of this is equivalent to no notice at all." This rule is firmly intrenched in the jurisprudence of this country. *Merriman* v. *K. M. B. Assn.* (1893), 138 N. Y. 116, 33 N. E. 738; *Kavanaugh* v.

*Insurance Co.* (1906), 117 Tenn. 33, 96 S. W. 499, 7 L. R. A. (N. S.) 253, 10 Ann. Cas. 680.

In *Courtney* v. *U. S. Masonic Benevolent Assn.* (1892), 53 N. W. (Iowa) 238, a notice of assessment was mailed to the assured on a certain date, and taken by an authorized person from the post office to the assured's residence; at this time, he was ill and unable to understand or transact any business, and so remained until his death, before which time the envelope containing the notice was not opened. *Held,* that the certificate of insurance was not forfeited for non-payment of assessments, since the assured had no actual notice thereof.

In the case of *Fritz* v. *Penn. Fire Ins. Co.* (1913), 85 N. J. Law 171, 88 Atl. 1065, 50 L. R. A. (N. S.) 35, it was held, by a divided court, that notice of the cancellation of an insurance policy inclosed in a postpaid registered envelope addressed to the insured and received but unopened by him, bearing upon its face the card of an insurance company other than the one in which the insured held a policy, although having upon it the name of the same agents as those of the company in which he was insured, was not, in and of itself, notice of cancellation. The insured might have concluded the letter was a solicitation for other insurance in another company, he might have refrained from opening it, thinking it to be some soliciting or advertising scheme in which he was not interested.

The question whether a notice has been received is for the jury. *Miner* v. *Mutual Fire Ins. Co.* (1908), 153 Mich. 594, 117 N. W. 211; *Hartford Fire Ins. Co.* v. *Tewes* (1907), 132 Ill. App. 321; *Condon* v. *Exton-Hall, etc., Agency* (1913), 142 N. Y. Supp. 548, 80 Misc. Rep. 369; *Pauley* v. *Sun. Ins. Co.* (1916), 79 W. Va. 187, 90 S. E. 552, L. R. A. 1918E 473. Where notice is required, and no mode is provided, a personal notice is necessary, unless the same purpose may other-

wise be accomplished. *Schmidt* v. *German Mut. Ins. Co., supra; Wachtel* v. *Noah Widows and Orphans' Beno. Soc.* (1881), 84 N. Y. 28, 38 Am. Rep. 478; *Antrim* v. *Telegraphers' Ben. Assn.* (1919), 93 N. J. Law 213, 107 Atl. 458; *Protection Life Ins. Co.* v. *Palmer, Admr.* (1876), 81 Ill. 88; *Orange Co. Fire Ins. Co.* v. *Frost, supra;* see Annotations, 7 L. R. A. (N. S.) 253. Notice must be given to the person upon whom rests the obligation to pay the premium. *Farnum* v. *Phoenix Ins. Co.* (1890), 83 Cal. 246, 23 Pac. 869, 17 Am. St. 233. It must be given to the insured or by some one authorized by him to receive it. *Kinney* v. *Rochester German Ins. Co.* (1908), 141 Ill. App. 543; *Kinney* v. *Caledonian Ins. Co.* (1909), 148 Ill. App. 256; *Von Wien* v. *Scottish, etc., Ins. Co.* (1887), 54 N. Y. Super. Ct. 276.

An employee who keeps a record of the insurance policies belonging to the insured is not necessarily one to whom notice of cancellation may be given. *Edwards* v. *Home Ins. Co.* (1902), 100 Mo. App. 695, 73 S. W. 886. In the case of the *American Surety Co.* v. *Pauly, supra,* it was held that the presumption that the agent informed his principal of that which his duty and the interest of his principal required of him to communicate does not arise where the agent acts or makes declarations, not in execution of any duty that he owes to the principal, or within any authority possessed by him, but to subserve his own personal ends or to commit some fraud against his principal.

The rule that notice to an agent is notice to the principal does not apply when the circumstances are such as to raise a clear presumption that the agent will not transmit his knowledge to his principal, as in cases where his interest is antagonistic to that of his principal. *Innerarity* v. *Merchants' Nat. Bank* (1885), 139 Mass. 332, 1 N. E. 282; *Lanier* v. *Little Rock Cooperage Co.* (1909), 88 Ark. 557, 115 S. W. 401;

*Merchants Nat. Bank* v. *Nichols & Co.* (1906), 223 Ill. 41, 7 N. E. 38, 7 L. R. A. (N. S.) 752.

In such cases the position he assumes conflicts entirely with the idea that he represents the interests of the principal. *Findley* v. *Cowles* (1895), 93 Iowa 389, 61 N. W. 998; *Hummel* v. *Bank* (1888), 75 Iowa 689, 37 N. W. 954.

So, in this case, when notice of cancellation was sent to the appellee, the return receipt was signed by John T. Andrews, the man whose honesty was assured to the appellee, and it cannot be said that notice to him and under such circumstances was such personal notice to appellee as the law requires. The evidence further on this point is that the letter was placed by Andrews on the desk of the president, Otto Minter, who testified he never received the letter.

The notice to the appellee of the appellant's intentions to cancel the bond falls short of being personal notice required by law, and the question of whether the appellee had sufficient knowledge of the misconduct of the insured amounting to embezzlement or larceny was, under the facts in this case, a question for the jury. We must, therefore, conclude that the court committed no error in overruling appellants' motion for a new trial.

Judgment affirmed.